NASCOTE INDUSTRIES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Janice Beck, Appellee).

Fifth District (Industrial Commission Division)   No. 5—03—0706WC

Opinion filed November 2, 2004.

Eric C. Disney, of Evans & Dixon, L.L.C., of St. Louis, Missouri, for appellant.

Jeffrey Estes, of Brown & Croupen, of St. Louis, Missouri, for appellee.

JUSTICE CALLUM delivered the opinion of the co.irt:

Claimant, Janice Beck, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)) for injuries she allegedly sustained while working for employer, Nascote Industries. The arbitrator awarded claimant 7$^1$/$_7$ weeks' temporary total disability (TTD) benefits, $583 in medical expenses, and 11$^5$/$_8$ weeks' permanent partial disability (PPD) benefits. The Industrial Commission (Commission) affirmed and adopted the arbitrator's decision. The trial court confirmed the Commission's decision, and employer appeals. We affirm.

## I. BACKGROUND

The arbitration hearing was held on October 31, 2000. Claimant worked as a trimmer in employer's molding department. She has worked for employer for 9$^1$/$_2$ years. Her duties included retrieving bumpers that were placed by a robot on a table and taking them to her trimming station to trim off any excess flash. She would then inspect the item, cover some parts, and take the item to a rack and place it on the rack.

On April 16, 1998, claimant was performing her trimming duties. She placed a trimmed bumper in a rack and turned around and stepped down out of the rack and onto the floor. As she stepped down about four to six inches to the floor, her foot "kind of turned over a little, and then it popped real loud." Claimant explained that she stepped on the outside part of her left foot. When her foot popped, she experienced "extreme" pain. She explained that there was nothing unusual on the floor like grease, dirt, or anything else that caused her to have any problems as she stepped down.

According to claimant, cycle speeds at the time of her accident were 70 to 75 seconds. She testified that the work was fast-paced and explained that she had to return to the table before the robot set down another part. In other words, her job required her to keep up with the press.

Claimant went to retrieve her next part and completed her work shift. She returned to work the following day, but her foot continued to hurt. Claimant was off of work for the weekend and returned to work on Monday, April 20, 1998. Her pain worsened, and she reported her accident to her supervisor. Thereafter, Monica Zapp, employer's nurse, wrapped claimant's foot. Claimant then sought medical treatment from Dr. John Visser, who had treated claimant's left foot in the past.

On April 24, 1998, claimant recorded a statement with Carolyn Sweeney of CNA Risk Management. Explaining how she sustained her injury, claimant stated, "I was just racking a part and as I stepped out of the rack onto the concrete floor, my foot just felt like it needed to pop and then it popped, and then it started hurting." Asked if she hit her foot on anything, claimant responded, "no, just stepping down on the concrete."

Claimant returned to work on July 11 or 12, 1998. She testified that, as of the date of the hearing, her left foot occasionally bothers her after working a full day and the injury has altered the way that claimant walks, in that she now walks on the outside part of her left foot. Between April 1998 and the arbitration hearing, claimant injured her foot once more in the fall of 1998 when a dresser drawer fell on it. She testified that she did not seek medical treatment for this injury. Before this second accident, claimant would not experience pain in her foot after working a full shift.

Addressing her pre-work-injury treatment with Dr. Visser, claimant explained that she had tarsal tunnel syndrome in her left foot and that she had surgery for this condition. Her treatment for it ended about six months before her work accident. Claimant testified that she had healed from that surgery. Any continuing pain that she felt following the surgery was in a different area of her foot than the pain she experienced following her work accident.

Dr. John Visser, who is a podiatric physician, testified at his deposition as follows. He treated claimant for two conditions. The first occurred before her work accident and involved chronic heel pain. Testing confirmed tarsal tunnel syndrome and claimant underwent a tarsal tunnel decompression and an instep fasciotomy on her left foot. Claimant completed her recovery and was released from medical care.

Dr. Visser next saw claimant following her April 16, 1998, work

incident. Claimant complained of pain to the top part of her left foot that was caused by a twisting injury at work. Her complaints were generally different from those relating to her previous injury. Claimant's symptoms were consistent with a metatarsal stress fracture, and, ultimately, Dr. Visser confirmed that there was a fracture present.

According to Dr. Visser, claimant sustained a fracture of the metatarsal secondary to a twisting injury that was caused by her work incident. Her prognosis was very good, and she responded to treatment and returned to work. Dr. Visser testified that he released claimant to return to work on June 6, 1998, and released her without restrictions on July 11, 1998.

Monica Zapp, a registered nurse, works as an occupation nurse with employer. She testified at the arbitration hearing as follows. She saw claimant on April 20, 1998, when claimant came to report her injury. Claimant described the pain and explained that she had stepped out of a rack. Zapp wrapped claimant's foot. Claimant also described the incident where a dresser drawer fell on her foot, and she stated that it occurred in June 1998. Zapp testified that claimant returned to light duty work on June 8, 1998, and was released to full duty work on July 11, 1998. However, she did not begin work on that date because employer's plant was shut down. Claimant was initially on light duty status because of her fracture, and then her restrictions changed due to the drawer accident. Zapp acknowledged that workers have to keep pace with the press.

On December 4, 2000, the arbitrator awarded claimant $7^1/_7$ weeks' TTD benefits and $583 in medical expenses. Also, finding that she sustained a $7^1/_2\%$ permanent loss of use of her left foot, the arbitrator ordered employer to pay claimant $11^5/_8$ weeks' PPD benefits. The arbitrator further found that claimant was a credible witness and that she sustained an injury within the course and scope of her employment with employer.

On July 3, 2002, the Commission affirmed and adopted the arbitrator's decision. The trial court confirmed the Commission's decision on October 23, 2003, and employer timely appealed.

## II. STANDARD OF REVIEW

Employer argues first that we should review *de novo* whether claimant's injury arose out of her employment with employer. It contends that *de novo* review is appropriate because the facts in this case are not in dispute and that the record is devoid of conflicting inferences that could be drawn from the facts.

■ Generally, the question of whether a claimant's injury arose

out of or in the course of the claimant's employment with employer is a question of fact for the Commission, and its determination will not be disturbed on review unless it is against the manifest weight of the evidence. *Joiner v. Industrial Comm'n*, 337 Ill. App. 3d 812, 815 (2003). However, when the facts are undisputed and susceptible of but a single inference, the question is one of law and subject to *de novo* review. *Joiner*, 337 Ill. App. 3d at 815. Although the facts here are undisputed, they are susceptible to more than one reasonable inference. Accordingly, we apply the manifest-weight-of-the-evidence standard.

## III. ANALYSIS

Employer argues that the Commission erred in finding that claimant's injury arose out of her employment.

■ To obtain compensation under the Act, a claimant must show, by a preponderance of the evidence, that he or she suffered a disabling injury that arose out of and in the course of the claimant's employment. 820 ILCS 305/2 (West 2002); *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194 (2002). An injury "arises out of" one's employment if it originates from a risk connected with, or incidental to, the employment and involves a causal connection between the employment and the accidental injury. *Baggett*, 201 Ill. 2d at 194. A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his or her duties. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58 (1989).

In determining that claimant's injury arose out of her employment, the Commission found that claimant was performing her work duties and was attempting to keep pace with the production line when she injured her foot. Employer argues that there was nothing unusual about its premises that contributed to claimant's injury. According to employer, while the trimming work required claimant to step out of the rack, it did not increase the risk of injury. It argues that a 4- or 6-inch step is negotiated by the general public daily and, in the absence of evidence that the step area was dangerous or that claimant's work pace was unusual, the Commission erred in finding that claimant's injury arose out of her employment.

Employer relies on *Caterpillar Tractor Co.* In that case, the employee injured himself while stepping off of a curb in the employer's parking lot. The supreme court first considered whether the employee's injury resulted from the condition of the employer's premises. It noted that the employee did not slip, trip or fall. The court then held that the injury did not result from the condition of the premises because there was no evidence that the curb was either hazardous or defective. *Caterpillar Tractor Co.*, 129 Ill. 2d at 61. Next, the court considered

whether the employee was subjected to a greater degree of risk than the general public due to his employment. It found that curbs and the risks that are inherent in traversing them confront all members of the public. Rejecting the employee's argument that he regularly crossed the curb to reach his car, the court found that there was nothing in the record to distinguish this curb from any other curb. Accordingly, the court held that the Commission's finding that the employee's injury arose out of his employment was contrary to the evidence. *Caterpillar Tractor Co.*, 129 Ill. 2d at 63.

■ We find *Caterpillar Tractor Co.* distinguishable because, in that case, the employee was not required as part of his job duties to continuously traverse the curb. It is true that the act, for example, of walking down stairs at work, by itself, does not establish that the claimant faced a risk greater than that faced by the general public. See *Nabisco Brands, Inc. v. Industrial Comm'n*, 266 Ill. App. 3d 1103, 1107 (1994). However, there exists an increased risk where the claimant is exposed to a common risk more frequently than the general public. See, *e.g.*, *City of Chicago v. Industrial Comm'n*, 389 Ill. 592, 601 (1945) (where the claimant injured his toe on a sidewalk curb, injury arose out of employment because the claimant was required to spend much of his day traversing city sidewalks). Here, claimant testified that her work was fast-paced and that the turnaround rate for each bumper was 70 to 75 seconds. Zapp, employer's occupational nurse, acknowledged that claimant had to keep pace with the press. The evidence also established that claimant stepped off part of a machine or platform that she was required to load as part of her job duties. Thus, her route was prescribed by her job, and she was not merely walking down a step. Based on this evidence, we conclude that the Commission could reasonably have found that claimant's injury arose out of her employment with employer.

## IV. CONCLUSION

For the reasons stated above, the order of the circuit court of Randolph County is affirmed.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and GOLDENHERSH, JJ., concur.