TINLEY PARK HOTEL AND CONVENTION CENTER, d/b/a Holiday Inn, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Delores Wheeler, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—04—1307WC

Opinion filed March 30, 2005.

Robert E. Luedke, of Thomas P. Marnell & Associates, of Chicago, for appellant.

Richard E. Aleksy and Allison M. Cychosz, both of Corti, Freeman & Aleksy, of Chicago, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Claimant, Delores Wheeler, filed an application for adjustment of claim against the employer, Tinley Park Hotel and Convention Center, d/b/a Holiday Inn, under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). An arbitrator ruled claimant's injuries did not arise out of her employment. The Illinois Industrial Commission[1] (Commission) reversed the decision of the arbitrator. The circuit court of Cook County confirmed and adopted the decision of the Commission. The issue on appeal is whether the Commission's determination that claimant's injuries arose out of the course of her employment is against the manifest weight of evidence. We affirm.

## FACTS

Claimant filed an application for adjustment of claim stating that she injured her ribs, left arm, and left shoulder in a work accident of September 22, 2001. The matter proceeded to arbitration. 820 ILCS 305/18, 19(b) (West 2002).

At arbitration, claimant testified that she had worked for the employer for approximately 20 years, but had only worked at Banana's Restaurant at the employer's Tinley Park location for not quite a year prior to the alleged accident. Claimant testified she was 66 years old

---

[1]Effective January 1, 2005, the name of the Industrial Commission was changed to the "Illinois Workers' Compensation Commission." However, because the Industrial Commission was named as such when the instant cause was originally filed, we will use this name for purposes of consistency.

at that time. Claimant testified that she worked two jobs for the employer, as a waitress and as a hostess. Claimant usually worked four days as a hostess and one day a week as a waitress. Claimant's schedule varied somewhat depending on the needs of the employer.

Claimant testified that when she began working at Banana's Restaurant, the flooring was painted concrete with no carpeting. She stated that two weeks prior to the alleged accident, carpet was installed. Claimant admitted a sample of the carpet into evidence. Claimant testified that she was required by the employer to wear black, closed-in, rubber-soled shoes. She described the requirement for the shoes as "anything that wouldn't slide." Claimant submitted the shoes she was wearing on the date of the alleged accident into evidence. Claimant testified that in the two-week period after the carpet was installed, she observed people tripping.

Claimant testified that on September 22, 2001, she was working as a hostess for the employer. She stated that her duties included seating people, taking telephone calls, making sure the menus were all in the right place, and giving customers menus. Claimant stated that at approximately 4 p.m., three people came in requesting seats in the smoking section, which is at the rear of the restaurant. Claimant was walking the customers to their seats when she tripped and fell. Claimant was asked:

"Q. [Attorney for claimant:] What, if anything, caused you to trip?

A. I tripped on the carpet. When I was walking, my right foot got stuck like on the carpet; and I just went down."

Claimant testified that she broke her wrist and arm from the fall. She was unable to catch herself on anything to break the fall. Claimant specifically denied tripping over her own feet. She testified that she landed on her stomach and could not turn herself over. Paramedics responded and transported claimant to the hospital. Claimant testified that she told personnel at the hospital how she fell.

On cross-examination, claimant testified that she did not see any food, liquid, or any foreign object on the floor, either before or after the accident. Claimant admitted that the carpet did not have any "frayed edges or worn spots." Claimant testified:

"Q. [Attorney for the employer:] Okay. Isn't it true that this carpeting was clean and level in the area where you fell?
***

A. Well, I know it was clean. I don't know about the level part.

I know before they laid the carpet, the concrete was unlevel, had waves in it, but I can't—I don't remember any uneven parts, no.

Q. Okay. You don't recall seeing any uneven parts in the carpeting, is that correct?

A. That's right.

Q. Okay. You were simply walking when you fell?

A. Right.

Q. Now, after your fall, did you look at the area where you fell?

A. Oh, yes.

Q. Okay. You didn't see any uneven parts, did you?

A. No, sir.

Q. Okay. You didn't see any frayed parts or any trim pieces sticking up or anything like that?

A. No, sir."

Claimant testified that the employer did not issue her shoes and that she selected and purchased them on her own.

Medical records indicate that claimant was transported to the emergency room on the date of the accident. The hospital records give a history that claimant reported having "tripped over carpeting" and that her "foot became entangled in rug."

Dina Sholtes testified that she began working as a hostess at Banana's Restaurant in December 2001. The new carpeting was installed by the time Sholtes began working for the employer, but she testified that she had "noticed several different people stumble" walking back and forth from the buffet. Sholtes testified:

"Q. [Attorney for claimant:] Let me start again. With respect to the buffet that you were describing, people going back and forth to the buffet, what[,] if anything[,] unusual have you noticed as customers have been going back and forth to the buffet?

A. Well, I have noticed regardless of what age that they are, I have noticed several people stumble as they walk on the carpeting.

I even watched a man stumble on the carpeting and then almost fall into the little island that we have in the middle of the restaurant, too.

Q. Are these observations limited to the people using the restaurant as customers or have you also had an occasion to observe this with respect to coworkers?

A. I have seen customers, coworkers, and even myself have done the same thing."

On cross-examination, Sholtes testified that she did not consider the carpet to be flat because there were lumps.

Paul Griva, the chief engineer at the employer's Holiday Inn Select facility in Tinley Park, testified that his duties were to maintain the building properly, including the carpeting. Griva supervised the installation of the carpeting. According to Griva, the concrete or subfloor was flat and level. The carpeting was glued directly to the concrete as there is no padding. After installation of the carpeting, Griva personally visually inspected the installation prior to making payment to the

installers. Griva testified that he did not notice any depressions or high spots in the subfloor. He stated that he had the opportunity to have the installers come back and correct any problem he had discovered, but there were no defects. Griva testified that within the month prior to arbitration, he had a conversation with claimant in which she stated that her foot basically just stopped on the carpet and she went down. On cross-examination, Griva testified that any complaints by either employees or customers about tripping on the carpeting would probably go to the restaurant manager and not to him. Griva also admitted that he was not a carpeting expert and did not personally install the carpeting. He stated that when he referred to the carpeting being flat, he was talking about the concrete surface on which it was laid, as opposed to the actual texture of the carpeting.

Tony Vari, director of security for the employer, testified that he responded to the scene when claimant fell. Vari testified that as claimant was lying on the floor, he asked her what had happened. He stated that claimant responded that she had been walking along the carpet and tripped. When Vari asked claimant what she tripped over, she said, "nothing, tripped over the carpet." Vari observed the area where claimant fell and did not see any liquid, food, high spots, depressions, or frayed or worn carpeting. He testified that he had not received any other complaints from other employees or customers about falling on the carpeting. On cross-examination, Vari testified that he did not actually see claimant fall. He also stated that he is not the person who oversees the operation of the restaurant.

The arbitrator found claimant's injuries did not arise out of her employment. The arbitrator found no risk of injury connected with claimant's employment, nor any risk to the general public to which she was exposed to a greater degree as a result of her employment. The arbitrator stated:

> "An accidental injury arises out of one's employment when the injury either has its origin in some risk connected with or incidental to the employment, or it is caused by some risk to which the employee is exposed to a greater degree than the general public by virtue of her employment. [Citation.] In the cause at bar, [claimant] tripped when her foot caught in the carpeting on which she walked. Walking on carpeting is an activity of daily life, and tripping while walking is a risk to which the general public is constantly exposed. The carpet involved in [claimant's] fall is a low nap industrial carpeting. Based upon [claimant's] description of the fall, it is clear [claimant] simply failed to lift her foot a sufficient distance from the floor as she walked misstepping and then falling. There is no evidence of any defect in the carpeting which created a

particular risk of employment. There is no evidence the texture, fiber content or weave of the rug presented any specific risk greater than that to which the general public is exposed. [Claimant] was not carrying anything in her hands when she fell. While Ms. Sholtes testified to other incident[s] of individuals tripping, Mr. Vari testified he received no complaints from patrons or employees regarding the carpeting. Ms. Sholtes testified she saw at least one patron slip, undercutting the inference that [claimant's] required footwear had any role in her fall. [Claimant's] injury arising from a misstep on carpeting is legally indistinguishable from the employee stepping from the curb in *Caterpillar v. Industrial Com.*, 129 Ill. 2d 52 (1989).

The [a]rbitrator notes this [is] not a case of an unexplained fall. [Claimant] testified clearly she fell because her foot stuck on the carpet as she walked."

The Commission initially entered a decision reversing the arbitrator with one commissioner dissenting. Claimant filed a petition for recall for clerical error under section 19(f) claiming the Commission failed to address the issue of penalties and fees. The Commission entered a second decision and opinion on review reversing the arbitrator, stating:

"Based upon the above, and the record as a whole, the Commission reverses the [d]ecision of [a]rbitrator to find that [claimant] sustained accidental injuries arising out of and in the course of her employment on September 22, 2001. The Commission finds that when [claimant] first began working at the restaurant in January, 2001, the floor surface was painted concrete, and did not contain any carpeting. [Claimant] testified that the painted concrete was uneven, and contained waves. The floor remained painted concrete until two weeks prior to September 22, 2001, when [the employer] installed new carpet in the restaurant. The Commission notes that the [claimant] and her co-worker, Dina Sholtes, testified about people tripping on the new carpet. The Commission observed the texture of the carpeting ([claimant] Ex. 1) and finds it reasonable that a rubber sole would stick to the texture of the carpeting. The Commission finds that the [claimant's] history of accident has always been consistent with her foot getting stuck or tangled on the carpet. The Commission finds that installation of a new working surface, different from the surface on which [claimant] was accustomed to traversing, also contributed to increase her risk of injury. The *** Commission further relies on the case of *Homerding v. Industrial Commission*, 765 N.E.2d 1064, 262 Ill. Dec. 456, 460 (2002) in which the [a]ppellate [c]ourt stated that 'it is clear that claimant fell while working, carrying out a task that was quite

foreseeable and necessary to her job. Accordingly, her injury necessarily arose out of and in the course of her employment. Additionally, the risk of injury to which claimant was exposed was connected to her employment.' [Claimant's] work duties as a hostess required her to traverse through the restaurant on the new working surface throughout her shift."

The circuit court confirmed the Commission. The employer appeals.

## ANALYSIS

The employer argues that the issue on review is whether the Commission's decision which had found claimant suffered a compensable accident on September 22, 2001, is erroneous as a matter of law. This characterization fails to address the arguments presented and the appropriate standard of review. A review of the arbitrator's and Commission's decisions, along with the arguments of the parties, reveals that what is at issue is whether claimant's injuries arose out of the course of her employment. The standard of review is whether the Commission's decision was against the manifest weight of the evidence.

■ In order to be compensated under the Act, a claimant must show, by a preponderance of the evidence, that she suffered a disabling injury that arose out of and in the course of her employment. 820 ILCS 305/2 (West 2002); *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194, 775 N.E.2d 908, 912 (2002). An injury "arises out of" a worker's employment if it originates from a risk connected with, or incidental to, her job and involves a causal connection between the employment and the accidental injury. *Nascote Industries v. Industrial Comm'n*, 353 Ill. App. 3d 1056, 1060, 820 N.E.2d 531, 534 (2004). A risk is considered incidental to employment where it belongs to or is connected with what a worker has to do in fulfilling her duties. *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194, 775 N.E.2d 908, 912 (2002); *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d 665, 667 (1989).

Employer contends there are no factual disputes and asserts that claimant was simply walking on carpet that was clean, flat, and free of defects. It characterizes claimant's assertion as being that the carpet is new, but newness is not a defect. Employer quotes the dissent to the initial Commission decision:

"Walking on a regular surface is not a risk peculiar to employment. The public has the same risk exposure. Falling on a smooth carpeted surface is not an accident under our statute. *Caterpillar Tractor v. Industrial Commission*, 129 Ill. 2d at 58, 541 N.E.2d at 667."

At first glance, the employer's brief and the dissenting opinion appear to raise an interesting question of law. If the condition of the

carpet was not defective, could claimant have been considered to be at a greater degree of risk than the general public due to the requirement of her work as a hostess that she move about the restaurant? In *Caterpillar*, the court provided an analysis of what it means for an injury to arise out of the course of employment. *Caterpillar*, 129 Ill. 2d at 58, 541 N.E.2d at 667. In *Caterpillar*, an employee injured himself while stepping off a curb in the employer's parking lot. The first step the court took was to consider whether the employee's injury resulted from the condition of the premises. *Caterpillar*, 129 Ill. 2d at 59, 541 N.E.2d at 668. The court noted that the employee did not slip, trip, or fall; he simply stepped off the curb and twisted his ankle. *Caterpillar*, 129 Ill. 2d at 60, 541 N.E.2d at 668. It held that the injury did not result from the condition of the premises as there was no evidence that the curb was either hazardous or defective. *Caterpillar*, 129 Ill. 2d at 61, 541 N.E.2d at 668. The court then considered whether the employee was subjected to a greater degree of risk than the general public due to his employment. *Caterpillar*, 129 Ill. 2d at 61, 541 N.E.2d at 668. The court found that the risk taken by the employee in traversing the curbs was the same as that of the general public and, therefore, did not arise out of the course of his employment. *Caterpillar*, 129 Ill. 2d at 63-64, 541 N.E.2d at 669.

This court recently distinguished *Caterpillar* in *Nascote Industries v. Industrial Comm'n*, 353 Ill. App. 3d 1056, 1060-61, 820 N.E.2d 531, 534 (2004). In *Nascote*, the employee worked as a trimmer in a molding department. The employee's duties included moving bumpers throughout the production facility and then moving trimmed bumpers onto a rack. After the employee had placed a trimmed bumper in a rack, she turned around, stepped out of the rack and onto the floor, injuring herself. The Commission found that the employee's injuries occurred as a result of her attempting to keep pace with the production line.

In affirming the Commission, this court distinguished *Caterpillar*. We noted that under *Caterpillar*, certain acts, such as walking down stairs at work, by themselves do not establish that an employee faces a greater risk than the general public. *Nascote*, 353 Ill. App. 3d at 1060-61, 820 N.E.2d at 535; see *Caterpillar*, 129 Ill. 2d at 61, 541 N.E.2d at 667; *Nabisco Brands, Inc. v. Industrial Comm'n*, 266 Ill. App. 3d 1103, 1107, 641 N.E.2d 578, 582 (1994). This court distinguished *Caterpillar* on the ground that in *Caterpillar* the employee was not required as part of his job duties to continuously traverse the curb. *Nascote*, 353 Ill. App. 3d at 1061, 820 N.E.2d at 535. In contrast, in *Nascote*, the employee was not merely walking down a step, but she was taking a route prescribed by her job. *Nascote*, 353 Ill. App. 3d at 1061, 820 N.E.2d at 535.

The circuit court in this case indicated that the Commission's decision should be confirmed under the analysis of *Nascote*. The court found claimant "was exposed to a risk greater than the general public because she was continually forced to perform an activity for work purposes, and it is reasonable to believe that an injury, such as a fall, was foreseeable."

Our review of the record indicates that the Commission was presented with conflicting evidence regarding the condition of the carpeting and the risk encountered by the claimant. Contrary to the employer's assertion, there was evidence that the carpeting presented claimant with an increased risk of injury.

The Commission was presented with a factual question regarding the condition of the carpeting at the time of the accident. Claimant testified that until a couple of weeks prior to the alleged accident, there was no carpet but rather painted concrete which was uneven and contained waves. Claimant testified that she had seen several people stumble on the newly installed carpeting. Claimant's testimony was supported by that of a coworker who testified she too had observed several people stumble. The coworker testified that she stumbled on the newly installed carpeting. The employer countered with testimony from its chief engineer and its director of security that the carpeting did not appear defective and that neither one of them personally received complaints about the carpeting from either customers or employees.

Claimant also presented evidence that the shoes she was wearing contributed to her fall. Claimant testified that she was required to wear black, closed-in, rubber-soled shoes as part of her job. According to claimant, she needed to wear shoes that would not slide in order to perform her duties. The shoes were submitted into evidence. The employer points out that claimant purchased the shoes and that the shoes were not issued by the employer. The fact that the employer did not purchase the shoes, however, does not mean that the shoes contributing to the fall was not attributable to her employment in light of the above-stated employer requirement.

Generally, the question of whether an employee's injury arose out of or in the course of her employment is a question of fact and the Commission's determination will not be disturbed on review unless it is against the manifest weight of the evidence. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221, 224 (1980). Unless the facts are undisputable and susceptible of only a single inference, the question is one of fact and not one of law. *Nascote*, 353 Ill. App. 3d at 1059-60, 820 N.E.2d at 534. The question of whether claimant did or did not catch her foot in newly installed carpeting that posed an

increased risk of fall is a question of fact that rested upon the credibility of claimant and the evidence she used to support her testimony.

The employer's reliance on *Hopkins v. Industrial Comm'n* is misplaced. *Hopkins v. Industrial Comm'n*, 196 Ill. App. 3d 347, 351, 553 N.E.2d 732, 734 (1990). In *Hopkins* the Commission denied compensation to a deputy bailiff who injured himself while training a rookie. During on-the-job training, the rookie was sitting in a swivel chair normally used by the deputy while the deputy was sitting nearby in a nonswivel, straight back chair. The rookie asked a question and, as the deputy turned in his chair to answer, he heard a pop and felt pain in his back. The appellate court affirmed the denial of the award. The court found there was evidence that the injury resulted from hazard personal to the deputy and unconnected to work. *Hopkins*, 196 Ill. App. 3d at 352, 553 N.E.2d at 735. The Commission was presented with testimony from a medical expert that the deputy had degenerative disc disease and was predisposed to back injury. The doctor testified that the same thing could have happened to the deputy while he was sitting in his living room watching television. *Hopkins*, 196 Ill. App. 3d at 349, 553 N.E.2d at 733. The court found there was no suggestion that the chair was defective or unusual in any way or that the deputy's holster got caught on the chair. *Hopkins*, 196 Ill. App. 3d at 351, 553 N.E.2d at 735.

Employer asserts that *Hopkins* stands for a broader principle that newness itself is not a defect. Even if the employer's interpretation were accepted, it would be of minor relevance to the case at hand. The Commission's decision does not rest primarily on there being a different work environment or change in routine. Instead, the Commission found credible the evidence suggesting that the condition of the newly installed carpet increased the risk of a fall. Unlike in *Hopkins*, the record supports a finding that claimant would have been more likely to fall at work than while in her living room.

 The Commission had the opportunity to judge the credibility of the witnesses and to resolve conflicts in evidence. *O'Dette*, 79 Ill. 2d at 253, 403 N.E.2d at 223; *cf. Vill v. Industrial Comm'n*, 351 Ill. App. 3d 798, 804, 814 N.E.2d 917, 922 (2004) (Commission did not find credible claimant testimony that she caught her foot in a crack in parking lot surface). In order for a Commission's finding of fact to be held against the manifest weight of the evidence, an opposite conclusion must be clearly evident. *Peabody Coal Co. v. Industrial Comm'n*, 349 Ill. App. 3d 493, 497, 812 N.E.2d 59, 64 (2004). In this case, there was sufficient evidence in the record to support the Commission's determination that the condition of the carpeting caused claimant to fall. See, *e.g., Litchfield Healthcare Center v. Industrial Comm'n*, 349

Ill. App. 3d 486, 491, 812 N.E.2d 401, 406 (2004) (employee tripped on uneven sidewalk connecting parking lot to the workplace); *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 1054, 765 N.E.2d 1064, 1069 (2002) (employee slipped on ice outside rear entrance of salon while performing work task).

Accordingly, the order of the circuit court of Cook County confirming and adopting the decision of the Commission is hereby affirmed.

Affirmed.

MCCULLOUGH, P.J., and HOFFMAN, CALLUM, and HOLDRIDGE, JJ., concur.