ST. ELIZABETH'S HOSPITAL, Appellant, v. WORKERS' COMPENSATION COMMISSION *et al.* (Calvin Nichols, Appellee).

Fifth District    No. 5—06—0081WC

Opinion filed February 21, 2007.

Michael J. Nester and Robert J. Bassett, both of Donovan, Rose, Nester & Joley, P.C., of Belleville, for appellant.

Jon E. Rosenstengel and Jerald J. Bonifield, both of Bonifield & Rosenstengel, P.C., of Belleville, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Calvin Nichols filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). According to Nichols, he sustained a work-related injury when he slipped and twisted his back while in the employ of respondent, St. Elizabeth's Hospital (St. Elizabeth's). The arbitrator found that Nichols' condition of ill-being was causally related to his employment. The Workers' Compensation Commission (Commission) adopted the decision of the arbitrator, and the circuit court of St. Clair

County confirmed the award. St. Elizabeth's now appeals, contending that the Commission's decision was contrary to the manifest weight of the evidence. For the reasons that follow, we affirm.

■ Before turning to the merits of this appeal, we note that a potential jurisdictional issue exists. Though it was not raised by the parties, we have a duty to consider our jurisdiction over an appeal and dismiss it if jurisdiction is lacking. *Peabody Coal Co. v. Industrial Comm'n*, 307 Ill. App. 3d 393, 395 (1999). In this case, the arbitrator did not set an amount for temporary total disability (820 ILCS 305/ 8(b) (West 2002)) in his order, and the Commission simply adopted the order without addressing this omission. In certain circumstances, where the amount of an award is not set, appellate jurisdiction is lacking. Two cases exemplify this principle.

In *A.O. Smith Corp. v. Industrial Comm'n*, 109 Ill. 2d 52, 54-55 (1985), a trial court reversed a decision of the Commission and remanded. Appeal was taken directly to the supreme court. The parties, however, had stipulated to the facts, including the employee's earnings and weekly benefits payable under the Act. *A.O. Smith Corp.*, 109 Ill. 2d at 54. The supreme court, while noting that jurisdiction would ordinarily be lacking following a remand by a trial court to the Commission, did not dismiss the appeal because, due to the parties' stipulations, "[t]he calculation of the amount of the award upon affirmance is a simple mathematical process." *A.O. Smith Corp.*, 109 Ill. 2d at 54-55.

The appellate court elaborated upon that holding by the supreme court in *Williams v. Industrial Comm'n*, 336 Ill. App. 3d 513, 516 (2003). In *Williams*, 336 Ill. App. 3d at 516, we held, "If, however, the agency on remand has only to act in accordance with the directions of the court and conduct proceedings on uncontroverted incidental matters or merely make a mathematical calculation, then the order is final for purposes of appeal." *Williams* involved two awards of attorney fees. The court distinguished between section 19(k) of the Act (820 ILCS 305/19(k) (West 2000)), which provides for a 50% award, and section 16 of the Act (820 ILCS 305/16 (West 2000)), which vests the Commission with the discretion to award "all or any part" of attorney fees and costs against an employer. Since section 19(k) requires only a simple mathematical calculation, that an award pursuant to it has not been set does not impair jurisdiction. *Williams*, 336 Ill. App. 3d at 516-17. Conversely, because the amount of fees under section 16 is discretionary, where the Commission has not determined the amount of an award, the order is not final. *Williams*, 336 Ill. App. 3d at 516-17.

Here, we are concerned with an award of temporary total disability (820 ILCS 305/8(b) (West 2002)). If ascertaining the proper amount of the award involves a simple mathematical process, we do not lack jurisdiction over this appeal. Section 8(b) of the Act provides:

"The compensation rate for temporary total incapacity under this paragraph (b) of this Section shall be equal to 66²/₃% of the employee's average weekly wage computed in accordance with Section 10, provided that it shall be not less than the following amounts in the following cases:

$100.90 in case of a single person;

$105.50 in case of a married person with no children;

$108.30 in case of one child;

$113.40 in case of 2 children;

$117.40 in case of 3 children;

$124.30 in case of 4 or more children;

nor exceed the employee's average weekly wage computed in accordance with the provisions of Section 10, whichever is less." 820 ILCS 305/8(b)(1) (West 2002).

Though the arbitrator did not set an amount for temporary total disability in his order, he did make a finding determining that Nichols' average weekly wage was $324.65. He also determined that Nichols was married and had eight children. Given these findings, determining the proper amount of the award for temporary total disability on remand is a simple mathematical process. Accordingly, pursuant to *Williams* and *A.O. Smith Corp.*, we do not lack jurisdiction over this appeal.

## BACKGROUND

A hearing on Nichols' application was held on June 18, 2003. Nichols testified that he was employed as a patient care assistant for St. Elizabeth's. His duties included transporting patients to surgery and moving medical equipment. He also was responsible for restocking surgical carts.

On September 16, 2002, Nichols was moving a bed to the patient floor. He came across five monitors in the front hall of the hospital. The monitors were about six feet tall and a couple of feet wide. Nichols moved the monitors back to their appropriate rooms. As he was moving the last monitor, Nichols stated, he encountered "some water or something" on the floor, which he did not see. Nichols slipped and caught himself on the monitor. He did not fall to the ground. Nichols explained what happened as he slipped: "[M]y weight went down and I, like, twisted my back[;] all the weight went on my back." He immediately experienced minor pain in his lower back.

Nichols acknowledged that he had previously experienced back pain in June 2002 or July 2002, which was diagnosed as a muscle

spasm. At that time, he did not experience any pain radiating down his leg. He was treated for this injury by Dr. Leone, who prescribed muscle relaxers. This injury caused Nichols to miss two weeks of work; however, after he resumed working, he did not have any problems with his back until the incident on September 16, 2002.

Nichols testified that after his fall in September, he started having a throbbing pain in his back. His right leg would also swell up and become numb. He never experienced pain radiating down his right leg before this incident. Also, according to Nichols, the pain he experienced after September 16 was worse than he had in June or July. Nichols has not worked since the incident.

Nichols sought treatment from Dr. Windsor, an emergency room doctor. Windsor took Nichols off work for a few days, gave him some pain medication, and referred him to Dr. Anwar Khan. Khan also prescribed pain medication. Eventually, Nichols sought treatment from Dr. William Sprich, whom Nichols knew from work. He first saw Sprich in November 2002.

Sprich sent Nichols for a number of tests. Sprich performed a two-level fusion at L2-L3 and L3-L4 on April 29, 2003. The surgery eliminated the pain in Nichols' leg and reduced his back pain. Nichols described his condition as "a lot better" since the surgery. At the time of the hearing, he had not been released to resume work and was still treating with Sprich.

Also entered into evidence was Sprich's deposition, which was taken on April 2, 2003. Sprich testified that he first saw Nichols on November 18, 2002. Nichols complained of back pain and radiculopathy. Nichols described the incident where he fell and caught himself on the monitor. Sprich performed an examination. It revealed that Nichols suffered from spasms in his lower back and that his range of motion was limited by his condition. An MRI showed either a herniation or very pronounced bulge at L2-L3. A discogram revealed a tear. Sprich opined that Nichols' injury was consistent with the sort of twisting Nichols had described to Sprich. Sprich recommended two courses of action to Nichols, one of which was a two-level fusion. Sprich later explained that an injury at the level of Nichols' was more consistent with a twisting injury and less consistent with normal wear.

During cross-examination, Sprich agreed that the majority of the protrusion at the L2-L3 level was on the left side; however, he disagreed when defense counsel stated that such a protrusion would not cause pain in Nichols' right leg. Sprich also agreed that some of Nichols' degeneration likely preceded the September 16 incident. Additionally, Sprich related that Nichols reported that he had no history of prior back injuries when Nichols first came to him.

Dr. Russell Cantrell also testified via evidence deposition. Cantrell stated that he examined Nichols at the request of St. Elizabeth's. Cantrell reviewed an MRI that had been performed on Nichols on September 24, 2002. During a physical examination, Cantrell noted that Nichols was standing in such a way as to shift weight off his right leg and that Nichols' range of motion was limited. However, Cantrell opined that the results of radiological testing "did not correlate with [Nichols'] subjective pain complaints." Cantrell believed that further treatment would not alleviate Nichols' subjective complaints. Cantrell testified that any injury sustained on September 16, 2002, did not result in any limitations on Nichols' activities. Further, he opined that no indications for surgery existed relative to that injury.

Dr. David Kennedy also examined Nichols, and his report was entered into evidence. Kennedy reviewed Nichols' MRI and discogram. He was aware of the manner in which Nichols was alleged to have been injured. The report states that the discogram that was performed on Nichols was "problematic" due to the fact that all levels produced some pain. Additionally, he believed that the MRI did not show any pathology that required surgery. Kennedy wrote, "I am not able to say with certainty that any of those levels were damaged or otherwise influenced by the injury of September 16, 2002." Finally, he opined that Nichols' symptoms "were compatible with lumbar strain."

The arbitrator found that Nichols' injury arose out of and occurred in the course of his employment. The arbitrator relied heavily on the opinion of Sprich. He noted that Sprich had observed Nichols prior to the accident of September 16, 2002, and that Nichols could, at that time, perform his job. The arbitrator also credited Nichols' testimony that he had not experienced any radicular symptoms in his legs prior to the accident and that these symptoms disappeared after the surgery. Additionally, in assessing whether the medical services Nichols received were reasonable and necessary, the arbitrator found Sprich credible and expressly found Kennedy and Cantrell to lack credibility. The Commission adopted the decision of the arbitrator and affirmed. On review, the circuit court confirmed.

Before turning to the merits of this case, we note that our review is hampered by the parties' persistent failure to provide citation to the record in the argument section of their briefs. Supreme Court Rule 341 requires that the argument section of a brief "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." 210 Ill. 2d R. 341(h)(7). Counsel is cautioned that such omissions may result in the waiver of an argument (see *Mikrut v. First Bank of Oak Park*, 359 Ill. App. 3d 37, 51 (2005)), and we will not hesitate to enforce such rules in the future.

## ANALYSIS

■ On appeal, St. Elizabeth's raises a single issue: whether Nichols' condition of ill-being was causally related to the incident that occurred on September 16, 2002. Whether a causal connection exists between a claimant's injury and his or her employment presents a question of fact. *Land & Lakes Co. v. Industrial Comm'n*, 359 Ill. App. 3d 582, 592 (2005). We will disturb a factual determination of the Commission only where it is contrary to the manifest weight of the evidence. *Vogel v. Industrial Comm'n*, 354 Ill. App. 3d 780, 786 (2005). It is the role of the Commission to resolve conflicts in the evidence, and this is particularly true with regard to medical-opinion evidence. *Navistar International Transportation Corp. v. Industrial Comm'n*, 331 Ill. App. 3d 405, 415 (2002). It is also the duty of the Commission to assess the credibility of witnesses and assign weight to their testimony. *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 483-84 (1989). In order for us to find a decision to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. *Tinley Park Hotel & Convention Center v. Industrial Comm'n*, 356 Ill. App. 3d 833, 842 (2005). It is not enough that this court or some other tribunal might come to a different result. *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828, 833 (2002).

It is axiomatic that, in order to prevail on a claim under the Act, an injury must arise out of and occur in the course of employment. See, *e.g.*, *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194 (2002). To this end, a claimant must show, *inter alia*, that some aspect of his or her employment was a causal factor that resulted in the complained-of injury. *Teska v. Industrial Comm'n*, 266 Ill. App. 3d 740, 742 (1994). In the first instance, the inquiry regarding causation focuses upon whether, by virtue of his or her employment, a claimant is subject to some risk beyond that to which the general public is exposed. *Becker v. Industrial Comm'n*, 308 Ill. App. 3d 278, 281 (1999). In this case, St. Elizabeth's does not dispute that Nichols sustained an injury on September 16, 2002. Rather, it contests the scope of his injury, arguing that he reached maximum medical improvement with regard to that accident on November 19, 2002, and that the condition of ill-being that led to his surgery was not caused by the September 16 incident. According to St. Elizabeth's, that surgery resulted from the "progression of a degenerative spine condition."

St. Elizabeth's is correct that, in addition to a claimant proving that he or she was exposed to some risk that the public does not experience, it is also necessary that the claimant show that a work-related accident was a causative factor in the claimant's condition of ill-being. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 205 (2003). It is not,

however, necessary that the employee demonstrate that the injury was "the sole or principal causative factor, as long as it was a causative factor in the resulting condition of ill-being." *Land & Lakes Co.*, 359 Ill. App. 3d at 592.

Additional considerations guide the analysis where, as here, St. Elizabeth's alleges that a claimant's condition is the result of a preexisting condition. Where a preexisting condition is present, a claimant must show that "a work-related accidental injury aggravated or accelerated the preexisting [condition] such that the employee's current condition of ill-being can be said to have been causally connected to the work-related injury and not simply the result of a normal degenerative process of the preexisting condition." *Sisbro, Inc.*, 207 Ill. 2d at 204-05. It is also true, however, that employers take their employees as they find them. *Baggett*, 201 Ill. 2d at 199. Thus, even where a preexisting condition exists, recovery may be had if a claimant's employment is a causative factor in his or her current condition of ill-being. *Sisbro, Inc.*, 207 Ill. 2d at 205. Allowing a claimant to recover under such circumstances is a corollary of the principle that employment need not be the sole or primary cause of a claimant's condition (*Land & Lakes Co.*, 359 Ill. App. 3d at 592). Thus, only where an employee's health is so deteriorated that typical daily activity constitutes overexertion will recovery be denied. *County of Cook v. Industrial Comm'n*, 69 Ill. 2d 10, 18 (1977). The question of whether a claimant's condition of ill-being is the sole result of a preexisting condition is one of fact. *Sisbro, Inc.*, 207 Ill. 2d at 205.

St. Elizabeth's claims that Nichols' need for surgery stemmed entirely from a preexisting condition. In support of this proposition, St. Elizabeth's notes that Nichols missed two weeks of work approximately two months prior to September 16, 2002, due to back problems. Further, Nichols did not report any right-leg radiculopathy until November 2002. During the interim period, St. Elizabeth's states, straight-leg raise tests were normal. Also, the disc protrusion revealed in Nichols' MRI was on the left side, while his radiculopathy was on the right. St. Elizabeth's further relies on the opinions of Cantrell and Kennedy, as well as the fact that Khan released Nichols for light duty on October 24, 2002, and November 6, 2002. Cantrell opined that Nichols had reached maximum medical improvement on November 19, 2002.

While these facts and assertions certainly do support St. Elizabeth's argument, we note several problems with its ultimate position. Most importantly, the arbitrator and the Commission found that Cantrell and Kennedy lacked credibility. We, of course, will not substitute our judgment for that of the Commission on this matter. *Al-*

*exander v. Industrial Comm'n*, 314 Ill. App. 3d 909, 915 (2000). This finding makes St. Elizabeth's reliance on these two opinions dubious.

Additionally, there is significant contradictory evidence in the record. As the arbitrator aptly observed, Nichols was able to perform his job before September 16, 2002. That he was able to do so undercuts St. Elizabeth's reliance on the principle that "a claimant is not entitled to compensation where the claimant's health has so deteriorated that any normal daily activity is overexertion." Quite simply, this fact supports an inference that Nichols' condition prior to September 16 had not greatly deteriorated. That Nichols missed two weeks of work with back spasms earlier in the summer of 2002 does not preclude the September 16 incident from having exacerbated an earlier injury, nor does it so conclusively indicate a preexisting condition as the sole cause of Nichols' subsequent condition of ill-being that a contrary decision by the Commission cannot stand. Moreover, as the arbitrator also observed, prior to September 16, 2002, Nichols experienced no radiculopathy. On this point, St. Elizabeth's observes that Nichols did not complain of radiculopathy until about two months after the accident. That observation goes to the weight of the evidence offered by Nichols. In *Corn Products Co. v. Industrial Comm'n*, 51 Ill. 2d 338, 339-41 (1972), our supreme court held that the fact that an employee did not report an aspect of his injury for six months was a matter of weight for the Commission to resolve and did not preclude an award under the Act. In this case, that "there was no notation of a lumbar radiculopathy" is clear from the record. The Commission is presumed to consider competent evidence before it. *Glover v. Industrial Comm'n*, 140 Ill. App. 3d 361, 365 (1985). In this instance, it apparently resolved this issue against St. Elizabeth's and found Nichols credible.

Finally, the decision of the Commission finds support in Sprich's opinion. In his deposition, Sprich testified that Nichols' injury was consistent with the type of accident Nichols described. Sprich explained that discs at the level of the spine at which Nichols was injured are not typically subject to degeneration from normal wear because they are less mobile than lower discs are. Rather, such an injury is consistent with the sort of twisting that Nichols described. St. Elizabeth's criticizes Sprich's opinion; however, the Commission was aware of any weaknesses in Sprich's opinion of which St. Elizabeth's now complains and chose to accept it anyway. Essentially, what St. Elizabeth's is asking this court to do is reject Sprich's testimony in favor of Cantrell's and Kennedy's. As noted above, it would be particularly inappropriate for us to substitute our judgment for that of the Commission regarding a conflict in medical-opinion testimony. *Navistar International Transportation Corp.*, 331 Ill. App. 3d at 415; *Teska*, 266 Ill. App. 3d at 741.

890

In conclusion, there is evidence in the record that supports both parties' positions. St. Elizabeth's quarrels with the Commission's decision amount arise largely from the Commission's findings that Sprich was credible while Cantrell and Kennedy were not. Making such determinations is for the Commission and not for a court of review. *Paganelis*, 132 Ill. 2d at 483-84. Furthermore, for the purpose of resolving this appeal, we cannot say that the evidence so overwhelmingly favors St. Elizabeth's that a conclusion opposite to that arrived at by the Commission is clearly apparent. Thus, we also cannot say that its decision was contrary to the manifest weight of the evidence. *Tinley Park Hotel & Convention Center*, 356 Ill. App. 3d at 842. The judgment of the circuit court of St. Clair County confirming the decision of the Commission is affirmed. Because the arbitrator and the Commission did not set an amount for temporary total disability, we remand this cause to the Commission so that an appropriate award may be entered. See *A.O. Smith Corp.*, 109 Ill. 2d at 58.

Affirmed and remanded.

McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and DONOVAN, JJ., concur.