JUSTICE McCULLOUGH delivered the opinion of the court: On September 8, 2006, the trial court entered an order, authorizing the involuntary treatment of respondent, Dorothy J.N. Respondent appeals, arguing (1) the court’s decision was against the manifest weight of the evidence and (2) the court’s order failed to comply with the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1 — 100 through 6 — 107 (West 2004)) because it forced the administration of a nonpsychotropic medication. We reverse. On August 23, 2006, a petition was filed for the authorized involuntary treatment of respondent, alleging she was mentally ill, refused to submit to treatment by psychotropic medication, and lacked the capacity to give informed consent. An order from the trial court was sought, authorizing the involuntary treatment of respondent in the form of psychotropic medication. Prolixin was requested as the first choice of medication to be administered to respondent, with alternative medications being Zyprexa and Celexa. The petition also sought to have Metoprolol, a blood-pressure medication, administered to respondent. On September 8, 2006, the trial court conducted a hearing on the petition. The State presented the testimony of Dr. Fareed Tabatabai, a psychiatrist. Dr. Tabatabai testified he treated respondent for schizo-affective disorder, a serious mental illness. He stated respondent received treatment for her mental illness for several years, dating back to the 1960s, and had been admitted to mental-health facilities in the past. Respondent was stable for several years while on medication; however, she stopped taking her medication, resulting in her most recent hospitalization. Dr. Tabatabai stated respondent’s symptoms included delusions that caused her not to eat or drink for several weeks, the refusal to take medication, and a general deterioration in her functioning. More specifically, respondent stated John Kennedy told her not to eat or take her medication. Dr. Tabatabai opined respondent’s mental illness and symptoms were continuing and if her symptoms were not stabilized she would develop medical complications, including malnutrition, hypertension, and risk of stroke. Dr. Tabatabai recommended respondent resume taking the medications she took previously, which included Prolixin Decanoate, Celexa, and Zyprexa. He believed those medications would alleviate her symptoms within a few weeks and would be a benefit. If respondent did not take them, she risked prolonged psychosis and eventual physical deterioration to the point that she would have to be tube fed. Dr. Tabatabai testified that side effects of the medications included sedation, dizziness, and extrapyramidal symptoms. Further, he stated he verbally made respondent aware of the possible side effects of the medications but did not provide her with any written information. Dr. Tabatabai opined that, given respondent’s past medical history and her current condition, the potential benefits of the medications outweighed any potential harm. Based on her psychiatric illness and her symptoms, he did not believe respondent had the capacity to make a reasoned decision about whether to take the medications. Additionally, Dr. Tabatabai testified that respondent really had no other treatment options other than psychotropic medication and, thus, no less-restrictive form of treatment was available. On cross-examination, Dr. Tabatabai acknowledged respondent was a voluntary patient in a mental-health facility but was refusing treatment. However, on one or two occasions, she did take a dose of Zyprexa and the previous night she agreed to receive a Prolixin Decanoate shot. Dr. Tabatabai testified that the medications respondent agreed to take counted as treatment, but treatment was extremely sporadic. Further, he stated respondent’s capacity to give informed consent fluctuated over time. Finally, Dr. Tabatabai testified that Metoprolol, one of the medications listed in the petition, was not a psychotropic medication. Following Dr. Tabatabai’s testimony, respondent moved for a directed finding, arguing the State failed to prove she lacked capacity and the trial court did not have jurisdiction to order involuntary treatment with a nonpsychotropic medication. The court denied the motion. Respondent then additionally argued that a violation of section 2 — 102 of the Mental Health Code (405 ILCS 5/2 — 102 (West 2004)) occurred because she was not informed in writing about the medications. The State acknowledged that written information was not given to respondent but asserted Dr. Tabatabai or the mental-health facility’s staff could provide her with it “within the next few minutes.” The court then directed staff to provide respondent with written information on the medications. The record is silent as to whether respondent ever received any information in writing. Next, respondent testified on her own behalf. She stated she did not want to take medicine because “John” did not want her to and because it made her feel bad. Upon inquiry by the State, respondent indicated that the John Kennedy she was referring to was “John-John.” Following respondent’s testimony, the trial court authorized involuntary treatment to be administered to her as requested in the petition. This appeal followed. Initially, we note, this appeal is moot because the trial court’s order was effective for only 90 days and that time period has expired. However, review is appropriate under the public-interest exception to the mootness doctrine, and we will consider the merits of respondent’s appeal. In re Elizabeth McN., 367 Ill. App. 3d 786, 789, 855 N.E.2d 588, 590 (2006). In applying the public-interest exception, we are given the opportunity to provide guidance and suggestions with respect to the implementation of section 2 — 102(a—5) of the Mental Health Code (405 ILCS 5/2 — 102(a—5) (West 2004)). On appeal, respondent contends the trial court’s judgment is against the manifest weight of the evidence. Specifically, she argues the State failed to show, by clear and convincing evidence, that she lacked the capacity to make a reasoned decision regarding medication because she was not informed in writing about the risks and benefits of the proposed medications. Generally, a trial court’s order permitting the involuntary administration of psychotropic medication will not be reversed unless it is against the manifest weight of the evidence. In re Louis S., 361 Ill. App. 3d 774, 779, 838 N.E.2d 226, 231 (2005). “A judgment will be considered against the manifest weight of the evidence ‘only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence.’ ” Louis S., 361 Ill. App. 3d at 779, 838 N.E.2d at 231, quoting In re John R., 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003). Pursuant to the Mental Health Code, authorized involuntary treatment may be administered to an individual where the State proves the following by clear and convincing evidence: “(A) That the recipient has a serious mental illness or developmental disability. (B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient’s ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior. (C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms. (D) That the benefits of the treatment outweigh the harm. (E) That the recipient lacks the capacity to make a reasoned decision about the treatment. (F) That other less[-]restrictive services have been explored and found inappropriate. (G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment.” 405 ILCS 5/2— 107.1(a — 5)(4)(A) through (a — 5)(4)(G) (West 2004). Section 2 — 102(a—5) of the Mental Health Code (405 ILCS 5/2— 102(a — 5) (West 2004)) further provides as follows: “If the services include the administration of authorized involuntary treatment, the physician or the physician’s designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient’s ability to understand the information communicated.” In Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 232, this court determined the State failed to present clear and convincing evidence warranting the authorized involuntary treatment of the respondent because no evidence showed he received the written notification required by section 2 — 102(a—5). In so holding, we relied on John R., 339 Ill. App. 3d at 783, 792 N.E.2d at 355, wherein the Fifth District held that a respondent is entitled to receive the written notification required by section 2 — 102(a—5), even where he or she chose not to take the proposed medication after being verbally advised of its benefits and side effects. Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 232-33. We noted verbal notification is insufficient to ensure a respondent’s due-process rights. Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 233. Additionally, we stated that “the right to written notification is not subject to a harmless-error analysis” and that strict compliance with the procedural safeguards of the Mental Health Code is necessary to protect the liberty interests involved. Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 232, citing John R., 339 Ill. App. 3d at 783-84, 792 N.E.2d at 355. Here, Dr. Tabatabai testified he verbally advised respondent of the proposed medications’ side effects. He did not provide her with any written notification as required by section 2 — 102(a—5). Moreover, not only does section 2 — 102(a—5) require written notification of the proposed treatment’s side effects, it also requires written notification of risks, benefits, and alternatives to the proposed treatment. Dr. Tabatabai’s testimony fails to reflect that he informed respondent of anything other than the proposed medications’ side effects. The State contends that neither Louis S. nor John R. stands for the proposition that written notice may not be provided to the respondent at the time of the hearing. Although in this instance the State suggested respondent could be provided with written notification at the hearing and the trial court directed that to happen, the record fails to indicate any such action was ever taken. Additionally, the State argues that section 2 — 102(a—5)’s requirement that a respondent must be advised in writing concerning proposed treatment is excused when the treating physician believes the respondent lacks the capacity to understand and act upon the information. The State notes section 2 — 102(a—5) (405 ILCS 5/2— 102(a — 5) (West 2004)) states a physician or his designee “shall advise the recipient, in writing, *** to the extent such advice is consistent with the recipient’s ability to understand the information communicated.” We find the State’s argument unpersuasive and application of its asserted approach to section 2 — 102(a—5) would fail to protect the important liberty interests involved. As noted by the parties, in In re Steven P., 343 Ill. App. 3d 455, 460, 797 N.E.2d 1071, 1076 (2003), this court utilized the State’s same argument as a basis for holding that the respondent did not have to be advised in writing concerning the proposed involuntary treatment. However, the Illinois Supreme Court exercised its supervisory authority and vacated that judgment and directed this court to enter a judgment reversing and vacating the trial court’s order granting the petition for authorized involuntary treatment, and remanding for compliance with the statutory requirements of section 2 — 102 (a — 5). In re Steven P., 207 Ill. 2d 604, 801 N.E.2d 947 (2004) (nonprecedential supervisory order on denial of petition for leave to appeal). Moreover, with respect to this particular case, Dr. Tahatabai testified respondent’s capacity to give informed consent fluctuated over time, and he acknowledged that she agreed to take the proposed medication on at least two or three occasions while hospitalized. His testimony, therefore, indicates respondent had the capacity to understand and act upon the information she received at various points in time. In Louis S., 361 Ill. App. 3d at 780-81, 838 N.E.2d at 233, citing In re Richard C., 329 Ill. App. 3d 1090, 1095, 769 N.E.2d 1071, 1076 (2002), we noted that written notification provides a respondent with the opportunity to review the information at a time and in a manner of his choosing. Providing respondent with written information would have allowed her the opportunity to review it at a time when she had the capacity to give informed consent. In this case, respondent was not advised in writing of the side effects, risks, benefits, and alternatives to the proposed medications. The State failed to establish, by clear and convincing evidence, that respondent lacked the capacity to make a reasoned decision, and the trial court’s decision was against the manifest weight of the evidence. Given our holding, it is unnecessary to address respondent’s remaining contentions. For the reasons stated, we reverse the trial court’s judgment. Reversed.