FIRST DIVISION
June 16, 2008

No. 1-07-1387

| | | |
|---|---|---|
| *In re* C.S., a Person Subject to Involuntary Treatment | ) | Appeal from |
| | ) | the Circuit Court |
| (The People of the State of Illinois, | ) | of Cook County |
| | ) | |
| Peitioner-Appellee, | ) | No. 07 COMH 100 |
| v. | ) | |
| | ) | |
| C.S., | ) | Honorable |
| | ) | Susan Fox Gillis, |
| Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Respondent C.S. appeals an order of the trial court, granting the State's petition for the involuntary administration of psychotropic medications. The court signed the order even though it included haloperidol (Haldol) as a primary medication and despite uncontradicted evidence that respondent twice had suffered severe side effects after receiving Haldol. We reverse.

The record shows respondent was first hospitalized for mental illness in 1998. That year, and again in 2001, she had seizure-like symptoms after receiving Haldol. From 2002 to 2006, respondent took the drug risperidone (Risperdal) voluntarily with good results. In 2006, respondent again began showing symptoms of mental illness. She was hospitalized voluntarily in July 2006 at Chicago Read Mental Health Center (Read). She was still at Read in January 2007 when the State filed a petition for the involuntary administration of psychotropic

medications under section 2-107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1 (West 2006)). The State asked for authorization to administer Haldol, lorazepam and diphenhydramine as primary medications and chlorpromazine, divalproex, olanzapine and benztropine (Benadryl) as alternative medications.

The trial court held a hearing on April 23, 2007. The court granted the State's earlier-filed motion to amend its petition, adding oral doses of Risperdal as a primary medication, changing Olanzapine from an alternative to a primary medication and adding resperidone consta (Risperdal Consta) injections as an alternative medication. Respondent refused to participate in the hearing and left the courtroom.

Respondent's mother, N.S., testified for the State. N.S. said that in 2006, respondent became fearful, made false accusations, refused to see N.S. and spoke as if respondent's deceased father were still alive. N.S. testified on cross-examination that respondent had bad reactions to Haldol in 1998 while she was hospitalized in Elgin, and again in 2001 while she was at home after receiving Haldol at a hospital. N.S. said the reaction was "almost like a paralysis" and "I thought she was going to have some kind of a seizure." N.S. testified: "[Respondent's] eyes rolled back. She could not talk. Her speech was very slurred and her jaw [seemed] to be stiff." The 2001 episode prompted N.S. to take respondent to a hospital emergency room. On redirect examination, N.S. said she did not know if respondent had received medications to counteract the side effects of Haldol in 1998 or 2001.

Richard Malis, a psychiatrist, internist and medical director at Read, testified as the State's expert witness. Malis said he had only recently assumed responsibility for this hearing because the doctor who had prepared the petition recently had resigned. Malis said he observed

2

respondent in February 2007 while covering her unit for a vacationing psychiatrist. He said he conducted a psychiatric evaluation of respondent on April 20, 2007, three days before the hearing. Malis said he also inquired into respondent's social history, reviewed her hospital records and had conversations with other doctors, social workers and nurses on respondent's unit, respondent's current psychiatrist and N.S. Malis opined that respondent suffers from schizophrenia, a serious mental illness.

Dr. Malis testified that he knew respondent had been hospitalized in 1998, but he did not know the specifics of the hospitalization or respondent's history before 1998. He said the primary medications he sought included 5 to 45 milligrams of Haldol per day, orally or by injection. He said Benadryl and Cogentin would be given for the side effects of Haldol. Malis said the most appropriate medication for respondent would be Risperdal. He then said:

> "The next choice listed is Haldol. [Respondent] did report having what would be described as a dystonic reaction which is a short term acute muscle stiffness that can involve various parts of the body. That typically can be either avoided or readily treated with medications ***. It's a scary side effect that can be very uncomfortable. It's not anything that is dangerous."

Malis said other side effects of Haldol include sedation, abnormal muscle movements, tardive dyskinesia and, rarely, irregular heartbeats or neuroleptic malignant syndrome.

Malis' testimony showed he had not seen the records from respondent's earlier treatments with Haldol and he did not know if she had received adequate doses of medicines that combat side effects. He said that if he learned that respondent had received medicine for side effects but *still* had a bad reaction, he would find an alternative to Haldol.

3

On cross-examination, Dr. Malis admitted that a sticker on the front of respondent's medical chart showed that she was allergic to Haldol, among other things. He said more follow-up would be needed to determine whether respondent should receive Haldol.

The trial court determined that the State had met its burden of proving that the benefits of the treatments in the petition would outweigh the harm to respondent. The judge allowed Haldol to remain as a primary medication despite the evidence of respondent's severe reaction to the drug in the past. Respondent argues on appeal that the trial court's order was not supported by clear and convincing evidence that the benefits of the medication outweighed the harm.

We first note that this case could be considered moot because the trial court's order was effective for only 90 days under section 2-107.1(a-5)(5) of the Code (405 ILCS 5/2-107.1(a-5)(5) (West 2006)). This time period has expired. But an appellate court may consider an otherwise moot appeal on its merits if warranted under the public-interest exception to the mootness doctrine. In re Dorothy J.N., 373 Ill. App. 3d 332, 334, 869 N.E.2d 413 (2007). The public-interest exception applies where, as here, the reviewing court's decision will provide future guidance on the implementation of the Code. In re Dorothy J.N., 373 Ill. App. 3d at 334-35. We will consider this appeal.

In general, this court will not reverse a trial court's decision to grant a petition for the involuntary administration of psychotropic medication unless the decision was against the manifest weight of the evidence. In re Dorothy J.N., 373 Ill. App. 3d at 335. The term "against the manifest weight of the evidence" means that the opposite conclusion is apparent or that the finding is unreasonable, arbitrary or not grounded on the evidence. In re Dorothy J.N., 373 Ill. App. 3d at 335.

Section 2-107.1(a-5)(4) of the Code provides that psychotropic medication may be administered if and only if "it has been determined by clear and convincing evidence that all of [seven enumerated] factors are present." 405 ILCS 5/2-107.1(a-5)(4) (West 2006). The factor at issue here—whether the benefits of the treatment outweigh the harm—must be established by clear and convincing evidence. 405 ILCS 5/2-107.1(a-5)(4)(D) (West 2006). "Clear and convincing evidence has been defined as that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." In re John R., 339 Ill. App. 3d 778, 781, 792 N.E.2d 350 (2003).

Where, as here, an expert testifies, he must support his opinions with specific facts or testimony as to the bases of those opinions. In re Alaka W., 379 Ill. App. 3d 251, 263, 884 N.E.2d 241 (2008). An expert's testimony, without more, is not enough to satisfy the clear and convincing evidence standard. In re Alaka W., 379 Ill. App. 3d at 263. The statutory scheme of the Code requires "specific evidence [of] the benefits and risks of each medication *** so that the trial court may determine whether the State can demonstrate by clear and convincing evidence that the benefits of the proposed treatment outweigh the potential harm." In re Alaka W., 379 Ill. App. 3d at 263.

Here, the State's only evidence was the testimony of N.S. and Dr. Malis. Neither one stated the expected benefits of Haldol to respondent. N.S. testified to the harm respondent had suffered from the drug in the past. Malis admitted that he knew none of the details of respondent's earlier experiences with Haldol. He testified that he did not know whether medications for the side effects of Haldol were given to respondent in 1998 or 2001. Despite Malis' lack of key information, the trial court allowed Haldol as a primary medication to be

involuntarily administered to respondent.

Even if the trial court had wanted to deny only the State's request to administer Haldol after hearing evidence of its potential harm to respondent, it could not have done so. The trial court did not have the option of striking Haldol from the list of medications in the petition as amended. Nor do we. Our supreme court in In re Mary Ann P., 202 Ill. 2d 393, 405, 781 N.E.2d 237 (2002), determined that courts may not engage in the "selective authorization of psychotropic medication." Recognizing that treatment with psychotropic medications often involves the administration of several medications, the supreme court held that the legislature did not intend "treatment orders to authorize something less than what the treating physician has prescribed." In re Mary Ann P., 202 Ill. 2d at 405. The court decided that when "the recommended treatment consists of multiple medications—some to be administered alternatively, some to be administered in combination, and some to be administered only as needed to counter side effects—it is only this treatment, in its entirety, that may be authorized." In re Mary Ann P., 202 Ill. 2d at 405-06.

Because there was no evidence of Haldol's benefits to respondent and ample evidence that she experienced severe side effects when she received the drug, we believe the trial court's decision to allow the involuntary administration of Haldol was against the manifest weight of the evidence. In re Dorothy J.N., 373 Ill. App. 3d at 335. The State failed to meet its burden of proof by showing by clear and convincing evidence that the benefits of Haldol outweighed its potential harm to respondent. In re Alaka W., 379 Ill. App. 3d at 263.

We reverse the trial court's judgment.

Reversed.

6

WOLFSON and GARCIA, JJ., concur.