*In re* LARRY B., a Person Asserted to Be Subject to the Involuntary Administration of Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Larry B., Respondent-Appellant).

Fifth District   No. 5—08—0344

Opinion filed September 4, 2009.

Barbara A. Goeben, of Illinois Guardianship & Advocacy Commission, of Alton, and Patricia Werner and Veronique Baker, both of Guardianship & Advocacy Commission, of Des Plaines, for appellant.

Randall Rodewald, State's Attorney, of Chester (Patrick Delfino, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Larry B., the respondent, appeals from the June 25, 2008, order of the circuit court of Randolph County finding him subject to the

involuntary administration of psychotropic medications pursuant to section 2—107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2—107.1 (West 2008)). The respondent argues that the trial court's finding that he met the statutory criteria for forced medication was against the manifest weight of the evidence. He seeks the reversal of the trial court's order. The State has filed a confession of error. For the following reasons, we reverse the trial court's order.

▪ Prior to discussing the case, we note that the appellate court has a duty to consider its jurisdiction on appeal and dismiss the appeal if jurisdiction is lacking. *St. Elizabeth's Hospital v. Workers' Compensation Comm'n*, 371 Ill. App. 3d 882, 883, 864 N.E.2d 266, 268 (2007). The issues raised on appeal from the order entered in this case, which order expired 90 days after its entry (405 ILCS 5/2—107.1(a—5)(5) (West 2008)), could be considered moot. Nevertheless, we will address the questions raised in this appeal under the "public-interest exception" to the mootness doctrine because they are capable of repetition yet might evade review because of the short duration of the orders. *In re Mary Ann P.*, 202 Ill. 2d 393, 401-02, 781 N.E.2d 237, 242-43 (2002); *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

▪ We also note that although the State has filed a confession of error, the appellate court is not relieved of its duty to perform its judicial function thereby; it is obligated to independently examine the errors confessed in order to protect the public interest. *Young v. United States*, 315 U.S. 257, 258-59, 86 L. Ed. 832, 834-35, 62 S. Ct. 510, 511 (1942); *In re Brandon L.*, 348 Ill. App. 3d 315, 318, 809 N.E.2d 763, 766 (2004).

BACKGROUND

On August 2, 2007, Larry B. was admitted to Elgin Mental Health Center after he was found unfit to stand trial in Cook County on multiple charges of attempted murder, aggravated discharge of a firearm, aggravated battery, and aggravated unlawful use of a weapon. On June 6, 2008, due to his aggressive and threatening behavior, he was transferred to Chester Mental Health Center (Chester MHC). At Chester MHC, he continued to be aggressive, threatening, paranoid, and disruptive. His physical aggression toward staff members twice necessitated the use of full leather restraints. The respondent was compliant about taking 300 milligrams of oral Seroquel (quetiapine fumarate), which is used to treat the symptoms of schizophrenia and bipolar disorder, at bedtime for his mood instability. See *In re Lisa P.*, 381 Ill. App. 3d 1087, 1094, 887 N.E.2d 696, 702 (2008).

On June 19, 2008, the respondent's psychiatrist, Basheer M. Ahmed, M.D., filed in the circuit court of Randolph County a petition seeking permission for the administration of involuntary treatment. The petition detailed the respondent's history of mental illness and treatment, his criminal history, and his then-current mental status. It stated that although the respondent was compliant at that time about taking Seroquel, his mental illness made it "very unlikely that he [would] continue to comply with his Seroquel." The petition listed a total of 14 oral and injectable antipsychotic medications, mood stabilizers, and drugs to treat the potential side effects of the other medications that his psychiatrist sought to administer to the respondent. The proposed dose, frequency, and mode of administration were set out in writing for each medication; the monitoring tests for the drugs were detailed as well. The petition also set forth the benefits that could be anticipated from each drug, as well as the common side effects of the various medications. It stated that the respondent would need periodic blood tests to monitor the level of drugs in his system and prevent side effects from the drugs. The petition and the notice of the date of the hearing on the petition were served on the respondent and his Randolph County public defender and his Cook County counsel in his criminal case. The respondent's Cook County public defender acknowledged service of the petition.

On June 25, 2008, the petition was heard by the court. The petition itself was, however, never entered into evidence by the State. Dr. Ahmed testified about the respondent's symptoms of psychiatric illness and his past treatment. He asserted that the respondent was "on emergency[-]enforced medications" and that, without emergency enforcement, he would not take his medications. He detailed the respondent's mental status and stated that he wanted to administer to the respondent the medications in the dosages that were set out in the petition and to monitor him with the requested tests. The doctor was of the opinion that the benefits of the proposed medications outweighed the risks that they entailed. He stated that he and the respondent had discussed the proposed medications and their potential side effects. Dr. Ahmed testified that the respondent had been on emergency-enforced medication with Seroquel for a short time, that he had exhibited no improvement in his mental status in the previous weeks because the dose of Seroquel was "very small," and that although he had reported "some vague, inconsistent[,] and unreliable side effects, [they] did not see any side effects objectively besides some sedation." The psychiatrist stated that the respondent lacked the capacity to participate meaningfully in medication decisions and that a good-faith attempt to find someone who held a durable power of attorney for his health care

decisions had been unavailing. Dr. Ahmed did not describe the nature of the tests that he sought permission to administer to the respondent in conjunction with his enforced medication. The respondent testified in a manner that demonstrated his paranoia, narcissism, delusions, grandiosity, and lack of rational thought processes. He told the court that although he was not mentally ill, he had nonetheless been voluntarily taking Seroquel every day.

The court found the respondent to be a person who had a serious mental illness who was subject to involuntary treatment, and the court granted the petition to administer the psychotropic medications in the dosages set forth in the petition. The court's written order included a chart of the medications; the prescribed dosages, frequency, and mode of administration; and the testing procedures that were authorized to monitor the respondent's medicated status. The respondent filed the instant appeal.

## STANDARD OF REVIEW

Generally, a trial court's order permitting the involuntary administration of psychotropic medication will not be reversed unless it is against the manifest weight of the evidence. *In re C.S.*, 383 Ill. App. 3d 449, 451, 890 N.E.2d 1007, 1010 (2008). "A judgment will be considered against the manifest weight of the evidence 'only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence.' " *In re Louis S.*, 361 Ill. App. 3d 774, 779, 838 N.E.2d 226, 231 (2005), quoting *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

## CONTENTIONS ON APPEAL

The respondent contends that the trial court's order authorizing the involuntary administration of psychotropic medication must be reversed. He asserts that he was denied due process by the State's failure to present sufficient evidence to support the grant of the petition for involuntary treatment. He also argues that the reversal of the order is mandated because his appointed counsel provided inadequate assistance.

## DISCUSSION

Initially, we observe that if a petition for the involuntary administration of psychotropic medication is granted and the object of the petition responds well to the medication and adjunct care, a respondent may well be restored to fitness to stand trial. The mere fact that he has attained fitness and remains fit through the continued use of psychotropic medication will not shield him from prosecution. See 725 ILCS 5/104—21(a) (West 2004) (a respondent who is receiving

psychotropic medication is not presumed unfit to stand trial solely because the respondent is taking psychotropic medication); *People v. Mitchell*, 189 Ill. 2d 312, 331, 727 N.E.2d 254, 266-67 (2000); *People v. Woodard*, 367 Ill. App. 3d 304, 320, 854 N.E.2d 674, 690 (2006). Public records of the Cook County sheriff's office, of which the court may take judicial notice (*People v. Monroe*, 366 Ill. App. 3d 1080, 1097, 852 N.E.2d 888, 904 (2006)), disclose that as of October 16, 2008, the respondent was in the custody of the Cook County sheriff's department following his transfer from Chester MHC.

I. Petitions for Involuntary Administration of Medication

The Illinois Supreme Court has observed that the involuntary administration of psychotropic drugs involves a " ' "massive curtailment of liberty." ' " *In re Robert S.*, 213 Ill. 2d 30, 46, 820 N.E.2d 424, 434 (2004), quoting *In re Barbara H.*, 183 Ill. 2d 482, 496, 702 N.E.2d 555, 561 (1998), quoting *Vitek v. Jones*, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1980). "Even during involuntary hospitalization, an individual retains his liberty interests to remain free from unwarranted intrusions into his body and mind." *In re Orr*, 176 Ill. App. 3d 498, 512, 531 N.E.2d 64, 74 (1988), citing *Mills v. Rogers*, 457 U.S. 291, 299, 73 L. Ed. 2d 16, 22-23, 102 S. Ct. 2442, 2448 (1982). The Code serves in part to protect patients from the potential misuse of psychotropic medication by medical staff to restrain, manage, or discipline patients, rather than to treat their mental illness. *In re Mary Ann P.*, 202 Ill. 2d 393, 408, 781 N.E.2d 237, 246 (2002); *In re C.E.*, 161 Ill. 2d 200, 215-16, 641 N.E.2d 345, 352 (1994); *In re Gloria B.*, 333 Ill. App. 3d 903, 905, 776 N.E.2d 853, 855 (2002). The petitioner seeking involuntary medication for a patient is thus required to prove by clear and convincing evidence that a recipient of mental health services has a serious mental illness or developmental disability; that his ability to function has deteriorated, that he is suffering, or that he exhibits threatening behavior; that the mental illness has continued for a period of time or episodically; that the benefits of the treatment outweigh the harm; that other, less restrictive services have been explored and found inappropriate; and that if authorization is sought for testing and other procedures, the testing and procedures are essential for the safe and effective administration of the treatment. 405 ILCS 5/2—107.1(a—5)(4)(A) through (a—5)(4)(G) (West 2008); *In re Dorothy J.N.*, 373 Ill. App. 3d 332, 335, 869 N.E.2d 413, 415-16 (2007). As the court observed in *In re M.T.*, 371 Ill. App. 3d 318, 862 N.E.2d 1079 (2007):

"Clear and convincing evidence is deemed to be more than a preponderance[ ] but does not reach the degree of proof necessary

to convict a person of a criminal offense. [Citation.] On review, we give great deference to the circuit court's factual findings and will not reverse its decision merely because we may have reached a different conclusion; instead, reversal is warranted only if the circuit court's decision is manifestly erroneous, *i.e.*, the error is clearly evident, plain, and undisputable." *In re M.T.*, 371 Ill. App. 3d at 323, 862 N.E.2d at 1083-84.

The procedural safeguards enacted by the legislature regarding authorization for the involuntary administration of psychotropic medication are not mere technicalities; rather, they are intended to safeguard the important liberty interests of the patient. *In re O.C.*, 338 Ill. App. 3d 292, 298, 788 N.E.2d 1163, 1168 (2003).

## II. Sufficiency of Evidence in Support of Petition

■ The respondent asserts that Dr. Basheer Ahmed's testimony was deficient in regard to the balance of the benefits and risks of each medication that he sought to use, the respondent's alleged lack of decisional capacity, the lack of less restrictive alternatives to enforced medication, and the necessity for the tests that the State sought to perform. The State concedes, and the court agrees, that Dr. Ahmed's testimony was insufficient to warrant the issuance of the order.

The State may not administer psychotropic medication to a recipient of mental health care services unless it proves by clear and convincing evidence that, *inter alia*, the benefits of the enforced medication outweigh the harm that might stem from the medication, the recipient "lacks the capacity to make a reasoned decision about the treatment," other, less restrictive treatment modalities have been explored and found not to be appropriate, and the proposed tests are necessary to ensure that the treatment for which permission of the court is sought will be safe and effective. 405 ILCS 5/2—107.1(a—5)(4)(D), (a—5)(4)(E), (a—5)(4)(F), (a—5)(4)(G) (West 2008); *In re C.S.*, 383 Ill. App. 3d 449, 451, 890 N.E.2d 1007, 1010 (2008). This court has found, "Clear and convincing evidence has been defined as that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

### A. *Benefit Versus Harm of Enforced Medication*

The court observed in *In re C.S.* as follows:

"Where, as here, an expert testifies, he must support his opinions with specific facts or testimony as to the bases of those opinions. [Citation.] An expert's testimony, without more, is not enough to satisfy the clear and convincing evidence standard. [Citation.] The statutory scheme of the Code requires 'specific evidence [of] the

benefits and risks of each medication \*\*\* so that the trial court may determine whether the State can demonstrate by clear and convincing evidence that the benefits of the proposed treatment outweigh the potential harm.' [Citation.]" *In re C.S.*, 383 Ill. App. 3d at 452, 890 N.E.2d at 1010-11.

Dr. Ahmed testified without elaboration that the benefits outweighed the risks. He failed to testify about the benefits or risks of *any* specific drug for which he sought leave to administer to the unwilling respondent. This glaring omission deprived the court of information that was essential to the evaluation of the petition before it. See *In re Alaka W.*, 379 Ill. App. 3d 251, 263, 884 N.E.2d 241, 250-51 (2008); *In re Louis S.*, 361 Ill. App. 3d 774, 782, 838 N.E.2d 226, 233-34 (2005); *In re Gail F.*, 365 Ill. App. 3d 439, 447, 849 N.E.2d 448, 455 (2006). The evidence at the hearing was factually insufficient to allow the court to find that the benefits of the administration of psychotropic medication to the respondent outweighed the risks. See *In re Lillie M.*, 375 Ill. App. 3d 852, 856, 875 N.E.2d 157, 161 (2007) ("While the underlying factual support of the testifying expert's opinion need not, as a matter of law, be substantively admissible, the expert's opinion must be supported by a sufficient factual basis to render it clear and convincing").

## B. *Decisional Capacity*

A competent person had a right at common law to refuse all types of medical treatment, including life-saving or life-sustaining procedures. *In re Estate of Longeway*, 133 Ill. 2d 33, 44, 549 N.E.2d 292, 297 (1989). This common law right was rooted in the "sacred" right to "personal inviolability." *In re Estate of Longeway*, 133 Ill. 2d at 44, 549 N.E.2d at 297. In Illinois, a competent person has a statutory right to refuse all types of medical treatment. See 755 ILCS 40/5 (West 2008). There is a federal constitutional right to refuse psychotropic medication under the liberty interests recognized in constitutional jurisprudence. *In re C.E.*, 161 Ill. 2d 200, 213, 641 N.E.2d 345, 351 (1994). Under the doctrine of *parens patriae*, however, the state may act in its capacity "as the provider of protection for those who are unable to care for themselves" and administer medical treatment where adequate judicially supervised protection for an incompetent person has been obtained. *In re Estate of K.E.J.*, 382 Ill. App. 3d 401, 414, 887 N.E.2d 704, 716-17 (2008).

The respondent in the instant case had been found unfit to stand trial on felony charges. His commitment to the mental health system was thus involuntary and an indication of his lack of decisional capacity. See *In re Lisa P.*, 381 Ill. App. 3d 1087, 1093, 887 N.E.2d 696, 702 (2008); *In re Israel*, 278 Ill. App. 3d 24, 37-38, 664 N.E.2d 1032, 1040

(1996). Although the respondent had apparently consented at one point to take Seroquel, on June 25, 2008, Dr. Ahmed testified that he was "on emergency[-]enforced medications," that the dose that he was taking was so minimal that it had no impact on his mental disease, and that he did not believe that the respondent would take his medication in the absence of emergency enforcement. As the court observed in *In re Lisa P.*:

> "[T]he mere fact that [the] respondent consented to taking some medication in the past does not mean that [he] possessed the capacity to make a reasoned decision about engaging in similar treatment in the future. *** [A]lthough [the] respondent consented to taking medication, [he] never consented to the type and amount of medication that was necessary to treat [his] mental illness." *In re Lisa P.*, 381 Ill. App. 3d at 1095, 887 N.E.2d at 703.

However, at the hearing, the only evidence that the State presented concerning the respondent's alleged lack of decisional capacity was Dr. Ahmed's negative response to the State's question, "Do you think that [the respondent] has a reasonable capacity to make his own informed decision about taking medications?" "No" falls far short of the presentation by the State of clear and convincing evidence of the respondent's lack of decisional capacity. This is so even though the respondent's testimony demonstrated that he understood that he had a choice to make about taking medication and that he asserted that he was, in fact, taking medication. See *In re Israel*, 278 Ill. App. 3d at 37, 664 N.E.2d at 1040. The court could not have legitimately found—on the basis of the evidence before it—that the involuntary administration of medication was warranted because the respondent lacked the capacity to make decisions about medication for himself.

### C. *Lack of Less Restrictive Alternatives to Enforced Medication*

The Code mandates that a recipient of mental health services be provided with adequate, humane care and services in the least restrictive setting within the institution and that the State demonstrate by clear and convincing evidence that less restrictive treatment modalities have been explored and found to be inappropriate prior to recommending draconic treatment. See 405 ILCS 5/1—102, 2—107.1(a—5)(4)(F), 3—811 (West 2008) (when committing a recipient of mental health services, "[t]he court shall order the least restrictive alternative for treatment which is appropriate"); *In re Phillip E.*, 385 Ill. App. 3d 278, 286, 895 N.E.2d 33, 42 (2008).

The sole evidence in support of the State's contention that the less restrictive alternatives to the forced administration of psychotropic medications had been considered and rejected was the State's question to Dr. Ahmed and his response: "[H]ave you also tried less restrictive

services for him?" "Yes." The State presented absolutely no proof that Dr. Ahmed's petition seeking permission for the enforced administration of 14 medications was one that had been made after thoughtful consideration of other, less intrusive means of treating his mental health issues. Without that testimony or any other evidence, there was no clear and convincing evidence upon which the trial court could base its decision to approve the involuntary administration of medication to the respondent as the least restrictive treatment. The court should not have granted the State leave to involuntarily administer the requested medication to the respondent.

## D. *Necessity for Monitoring Tests*

This court has ruled that the courts have the authority under the doctrine of *parens patriae* to order periodic blood testing that is necessary to ensure that the medications that they have ordered are being administered at a dosage level that is safe. *In re Floyd*, 274 Ill. App. 3d 855, 864, 655 N.E.2d 10, 15 (1995). We also ruled that the refusal to have blood work done constitutes a refusal to take the medication. *In re Floyd*, 274 Ill. App. 3d at 868, 655 N.E.2d at 18. After the *In re Floyd* decision was published, section 2—107.1(a)(4)(G) was added to the statute. Pub. Act 89—439, §100, eff. June 1, 1996; 405 ILCS 5/2—107.1(a)(4)(G) (West Supp. 1995) (now see 405 ILCS 5/2—107.1(a—5)(4)(G) (West 2008)). Now, when the State seeks the involuntary testing of the blood of a mental health recipient, the State must prove by clear and convincing evidence that the testing and procedures that are requested in the petition are "essential for the safe and effective administration of the treatment." 405 ILCS 5/2—107.1(a—5)(4)(G) (West 2008). The State asked Dr. Ahmed if he wanted the court to allow him to "do the testing and procedures necessary to make sure [the administration of psychotropic medication was] safely and effectively done." Dr. Ahmed responded "Yes." His testimony fell far short of clear and convincing specific expert testimony in support of a request for testing. The court's grant of permission to involuntarily perform the tests on the respondent was made in an informational limbo, not a fully informed state, warranting the reversal of the trial court's order.

## III. Ineffective Assistance of Counsel

The respondent also contends that his appointed counsel provided ineffective assistance. Because of our resolution of the preceding issues and our determination that the order granting the petition must be reversed, we need not consider the respondent's allegations of error regarding his counsel's representation.

## CONCLUSION

We do observe that the allegations of the petition were well-written and thoroughly documented. As this court stated in *In re Phillip E.*, "Our criticism is centered upon the presentation made to the court and the court's reliance upon less[-]than[-]full proof." *In re Phillip E.*, 385 Ill. App. 3d at 286, 895 N.E.2d at 42. We observed in *In re John R.* as follows:

"These proceedings should not be conducted *pro forma*. Fundamental liberty interests are involved in proceedings under the Code. [Citation.] The Code's procedural safeguards are not mere technicalities but essential tools to safeguard these liberty interests. [Citation.] Accordingly, those procedural safeguards are construed strictly in favor of the respondent and must be strictly complied with. [Citation.] The petitioner bears a substantial burden of proof that the trial judge should force the petitioner to meet with real, clear, and convincing evidence before the court enters an order infringing on the respondent's important liberty interests. We believe that every party involved in these proceedings has the best interests of the patient/respondents in mind. Nevertheless, the system can be, and has been, abused, and mistakes have no doubt been made. Accordingly, we remind the parties involved in these proceedings to be ever vigilant to protect the rights of the respondents as reflected in the Code." *In re John R.*, 339 Ill. App. 3d at 785, 792 N.E.2d at 356-57.

Had the allegations of the petition been supported by testimony from the psychiatrist or other evidence at the hearing, the grant of an order authorizing the involuntary administration of medication to the respondent would doubtless have been supported below and affirmed on appeal. The lack of evidence on the trial level, however, violated the respondent's due process rights, mandating the reversal of the trial court's order authorizing the administration to the respondent of involuntary treatment. As in the scenario presented in *In re Louis S.*:

"It may have been abundantly clear to those involved that respondent needed professional assistance and the administration of psychotropic medication. However, it remains imperative to conduct the proceedings pursuant to the requirements of the Code. The trial court and counsel involved in these proceedings would be well-advised to peruse the large number of cases dealing with the administration of involuntary treatment with the goal of affording the respondents with the rights they deserve and to which they are entitled. Continued adherence to the stated principles of the Code will not only foster confidence in our judicial system but will also ensure those who need help will receive it." *In re Louis S.*, 361 Ill. App. 3d at 783, 838 N.E.2d at 234.

480

For the foregoing reasons, the order authorizing the involuntary administration of psychotropic medications to the respondent is reversed.

Reversed.

CHAPMAN and SPOMER, JJ., concur.