NOTICE
Decision filed 09/24/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 130328

NO. 5-13-0328

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* STEVEN T., Alleged to Be a Person Subject to Involuntary Treatment With Psychotropic Medication | ) ) ) | Appeal from the Circuit Court of Randolph County. |
| | ) | No. 13-MH-84 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Steven T., Respondent-Appellant). | ) ) | |
| | ) ) | Honorable Richard A. Brown, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Spomer and Schwarm concurred in the judgment and opinion

**OPINION**

¶ 1    The respondent, Steven T., appeals from an order of the circuit court of Randolph County finding him subject to involuntary administration of psychotropic medications according to section 2-107.1(a-5) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1(a-5) (West 2012)).  The respondent argues that (1) the circuit court's finding that he met the statutory criteria for forced administration of medication was against the manifest weight of the evidence, and (2) he was not afforded effective assistance of counsel.  The State has filed a confession of error.  We find the respondent's contentions and the State's confession to be well-taken.  For the reasons that follow, we reverse the order of the circuit court.

1

¶ 2                                    BACKGROUND

¶ 3     The respondent was admitted to Chester Mental Health Center (Chester) on May 1, 2013, after having been found unfit to stand trial on a charge for domestic battery. He had no previous hospital admissions. Prior to being admitted to Chester, the respondent allegedly killed the family dog and then threatened to kill his family. Upon admission to Chester, he displayed aggressive behavior. On May 30, 2013, the respondent became agitated and threatened to harm others, which required restraints and the administration of emergency medication. On June 6, 2013, the respondent's treating psychiatrist at Chester, Dr. Sudarshan Suneja, filed a petition for the authority to administer involuntary psychotropic medication and the necessary, supportive medical testing. The petition indicated that the respondent had been given a list of side effects of the medication in writing. As the primary medications that Dr. Suneja sought to administer, the petition listed risperidone, risperidone consta, olanzapine, benztropine, lorazepam, and divalproex, with corresponding dosage ranges for each. The petition also listed alternative medications and their dosages should the primary medications prove to be ineffective. The petition also sought the authority to administer testing and procedures such as the use of a nasogastric tube should it become necessary.

¶ 4     The court held a hearing on the petition on June 12, 2013. Dr. Suneja testified for the State as follows. He diagnosed the respondent as suffering from schizophrenia, disorganized type, with psychotic features. Since May 31, 2013, the respondent had been on emergency medication because he had become agitated and had threatened to hurt

2

staff at Chester. The emergency medication had improved the respondent's symptoms by 60%.

¶ 5    Dr. Suneja testified that the respondent lacked the capacity to make a reasoned decision about his treatment and medication. He stated that the respondent was given a written list of the benefits and side effects of the requested medication, which was also attached to the petition. Dr. Suneja testified that the staff at Chester had tried activity therapy, milieu therapy, and individual and group counseling with the respondent, but the respondent did not benefit from those forms of treatment. However, Dr. Suneja did not testify as to whether the respondent received any written information about the risks and benefits of nonmedicinal forms of treatment.

¶ 6    Next, with respect to the testing and other procedures, Dr. Suneja did not testify or even confirm that he was asking the court for the authority to conduct testing or other procedures. On cross-examination, Dr. Suneja said that the respondent would be tested at regular intervals, and "[t]here's a protocol that pharmacy monitors and automatically the tests are done." The tests would be done within a month of starting the medication. No mention was made, either during direct examination or cross-examination, about Dr. Suneja's request for the use of a nasogastric tube.

¶ 7    The respondent testified that he did not believe he needed the medication. He explained that he would rather be in restraints than be forced to take medication. Since starting the emergency medication, he felt that the medication adversely affected his ability to communicate and he was unable to say words clearly. He felt sleepy and less vibrant.

3

¶ 8    The court entered an order for the administration of authorized involuntary treatment, finding that the respondent had a serious mental illness, had exhibited deterioration in his ability to function, and had exhibited threatening behavior.    In addition to authorizing the involuntary administration of psychotropic medication, the court ordered specific testing and procedures when necessary to administer the medication and that the medication be administered via a nasogastric tube should the respondent's medical condition be at risk from worsening psychosis.    This appeal followed.

¶ 9                                          ANALYSIS

¶ 10    We begin by noting that this appeal is moot because the 90-day period authorized by the circuit court's order has expired.    Nevertheless, we will address the questions raised in this appeal because they are capable of repetition yet might evade review because of the short duration of the orders and the respondent's continuing mental health issues and unwillingness to take medication.    See *In re Joseph M.*, 405 Ill. App. 3d 1167, 1175 (2010).

¶ 11    The respondent argues, and the State concedes, that the State failed to prove by clear and convincing evidence that (1) the respondent lacked the decisional capacity to make a reasoned decision about the proposed treatment (405 ILCS 5/2-107.1(a-5)(4)(E) (West 2012)), and (2) the tests and other procedures that the court ordered, which included the use of a nasogastric tube, were essential for the safe and effective administration of the medication (405 ILCS 5/2-107.1(a-5)(4)(G) (West 2012)).    The respondent further argues that he was denied the effective assistance of counsel.

4

¶ 12    The Code states that a recipient of mental health services shall be provided with adequate and humane care and services in the least restrictive environment, pursuant to an individual service plan. 405 ILCS 5/2-102(a) (West 2012). Section 2-102(a-5) of the Code states that if the services include the administration of psychotropic medication, the physician shall: (1) advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated, and (2) determine and state in writing whether the recipient has the capacity to make a reasoned decision about the treatment. 405 ILCS 5/2-102(a-5) (West 2012). If the recipient lacks the capacity to make a reasoned decision about the treatment, the treatment may be administered only pursuant to section 2-107 or 2-107.1 of the Code. 405 ILCS 5/2-102(a-5) (West 2012).

¶ 13    Medication may be administered to a recipient without his consent if and only if it has been determined by clear and convincing evidence that, *inter alia*, (1) the recipient lacks the capacity to make a reasoned decision about treatment, and (2) if the petition seeks the authorization for testing and other procedures, such testing and procedures are essential for the safe and effective administration of the treatment. 405 ILCS 5/2-107.1(a-5)(4)(E), (G) (West 2012). Whether there was substantial compliance with a statutory provision is a question of law, which we review *de novo*. *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 10. A reviewing court will not reverse a circuit court's determination about the sufficiency of the evidence unless such determination was against the manifest weight of the evidence. *Id.* A judgment is against the manifest

5

weight of the evidence only where the opposite conclusion is apparent or where the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 14    A patient's decisional capacity to make treatment decisions for himself is based upon the conveyed information concerning the risks and benefits of the proposed treatment and reasonable alternatives to treatment. *In re John R.*, 339 Ill. App. 3d 778, 785 (2003). The failure to provide the respondent with the statutorily mandated written information about the risks and benefits of the proposed treatment as well as the alternatives to the treatment amounts to reversible error because the respondent has not received all of the information necessary to make a rational choice. *In re Bobby F.*, 2012 IL App (5th) 110214, ¶ 18. The failure to provide the respondent with information about alternative nonmedicinal forms of treatment amounts to reversible error. *In re Laura H.*, 404 Ill. App. 3d 286, 291-92 (2010).

¶ 15    In this case, the petition listed the medications Dr. Suneja sought to administer and indicated that the respondent had been advised in writing as to the benefits and side effects of those medications. At the hearing on the petition, Dr. Suneja testified that the respondent was given a written list of the benefits and side effects of the medications he sought to administer. However, the petition did not contain any information about the alternative, nonmedicinal forms of mental health treatment available to the respondent, nor did Dr. Suneja testify that the respondent received written information about those methods of treatment. While Dr. Suneja did testify that the staff at Chester had tried different nonmedicinal forms of treatment with the respondent, it was necessary for the respondent to be provided with written information about those methods available to him

6

so that he could make a fully informed decision about his treatment. This is especially important considering the respondent indicated that he would rather be restrained than be on forced medication.

¶ 16 When seeking the involuntary testing of a mental health patient, the State must prove by clear and convincing evidence that such testing is essential for the safe and effective administration of the treatment. 405 ILCS 5/2-107.1(a-5)(4)(G) (West 2012). The State must present specific testimony about the requested testing and procedures. *In re David S.*, 386 Ill. App. 3d 878, 883 (2008). This court has reversed an involuntary medication order where the testifying physician simply confirmed at the hearing that he wanted to conduct testing to ensure that the administration of the medication was safely and effectively done. *In re Larry B.*, 394 Ill. App. 3d 470, 478 (2009). With no other evidence presented about the administration and testing methods, we found that the physician's testimony "fell far short of clear and convincing specific expert testimony in support of a request for testing." *Id.*

¶ 17 Here, the State did not present evidence about the necessity of the requested testing or procedures. Dr. Suneja simply testified that the testing would be conducted at regular intervals and would be done within a month of starting the medication. Further, the petition mentioned a nasogastric tube, yet no information about that procedure was given at the hearing, and the information in the petition simply stated that the testing and procedures were essential for the safe and effective administration of the medication. The State did not present any evidence to support this claim. Without more than a mere conclusion that the requested testing and nasogastric tube were necessary, the State failed

7

to provide the clear and convincing evidence required by the Code to administer tests, and potentially the nasogastric tube, without the respondent's consent.

¶ 18 The respondent also contended that his appointed counsel provided ineffective assistance. Because of the resolution of the preceding issues and our determination that the order granting the petition must be reversed, we need not consider the respondent's allegations of error regarding his counsel's representation. See *In re Larry B.*, 394 Ill. App. 3d 470, 479 (2009).

¶ 19                                              CONCLUSION

¶ 20 For the foregoing reasons, the judgment of the circuit court of Randolph County ordering the involuntary administration of medication for the respondent is reversed.

¶ 21 Reversed.

2014 IL App (5th) 130328

NO. 5-13-0328

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

In re STEVEN T., Alleged to Be a Person )     Appeal from the Circuit Court of
Subject to Involuntary Treatment With )     Randolph County.
Psychotropic Medication )
) No. 13-MH-84
(The People of the State of Illinois, Petitioner- )
Appellee, v. Steven T., Respondent-Appellant). )     Honorable Richard A. Brown,
) Judge, presiding.

_____

**Opinion Filed:**          September 24, 2014

_____

**Justices:**          Honorable Judy L. Cates, J.

Honorable Stephen L. Spomer, J., and
Honorable S. Gene Schwarm, J.,
Concur

_____

**Attorneys**          Veronique Baker, Director, Barbara A. Goeben, Staff Attorney,
**for**          Legal Advocacy Service, Guardianship and Advocacy Commission,
**Appellant**          Metro East Regional Office, 4500 College Avenue, Suite 100,
         Alton, IL 62002

_____

**Attorneys**          Hon. Jeremy R. Walker, State's Attorney, Randolph County
**for**          Courthouse, Chester, IL 62233; Patrick Delfino, Director, Stephen E.
**Appellee**          Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office of
         the State's Attorneys Appellate Prosecutor, 730 East Illinois
         Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____