Rule 23 order filed
October 18, 2018;
Motion to publish granted
November 16, 2018.

2018 IL App (5th) 150301

NO. 5-15-0301

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* CHRISTOPHER C., Alleged to Be a Person Subject to the Involuntary Administration of Psychotropic Medication | ) ) ) ) | Appeal from the Circuit Court of Randolph County. |
| (The People of the State of Illinois, Petitioner-Appellee, v. Christopher C., Respondent-Appellant). | ) ) ) ) ) ) | No. 15-MH-74 Honorable Richard A. Brown, Judge, presiding. |

_____

PRESIDING JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Justice Moore concurred in the judgment and opinion.
Justice Cates dissented, with opinion.

**OPINION**

¶ 1     The respondent, Christopher C., appeals from the order of the circuit court of Randolph County authorizing the involuntary administration of psychotropic medication and testing, pursuant to section 2-107.1(a-5) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1(a-5) (West 2014)). The respondent argues that the court's order failed to comply with the Code (*id.* § 2-107.1(a-5)(4)(G), (a-5)(6)) because (1) the State failed to prove by clear and convincing evidence that the testing and procedures requested in the petition were essential for the safe and effective administration of the medication and (2) the court's designation of specific persons authorized to administer treatment was not supported by the evidence. In addition, the respondent argues that he was denied effective assistance of counsel. For the reasons that follow, we reverse.

1

¶ 2                                    I. Background

¶ 3     The respondent was admitted to the Chester Mental Health Center (CMHC) on May 21, 2015, after he was found unfit to stand trial on a charge for aggravated assault. On July 23, 2015, the respondent's treating psychiatrist at CMHC, Dr. Nageswararao Vallabhaneni, filed a petition seeking an order authorizing the involuntary administration of psychotropic medications and testing, alleging the tests were necessary for the safe and effective administration of the medications. The petition detailed the primary and alternative medications, tests, and procedures in three separate tables that Dr. Vallabhaneni recommended for the respondent. The first table listed two primary medications, specifically, olanzapine and lorazepam. The second table listed two alternative medications, specifically, risperidone and clonazepam. The third table indicated that periodic blood draws and tests would be necessary to monitor the respondent's medication, electrolyte, and enzyme levels.

¶ 4     On July 29, 2015, the circuit court held a hearing on the petition. Dr. Vallabhaneni testified to the following. Dr. Vallabhaneni evaluated and then diagnosed the respondent with psychotic disorder, not otherwise specified. Because the respondent had a long history of recurrent symptoms (*i.e.*, threatening and disruptive behavior), Dr. Vallabhaneni opined that the respondent's mental illness had resulted in a deterioration of his ability to function.

¶ 5     Dr. Vallabhaneni described specific occasions where the respondent had displayed threatening and disruptive behavior. While in jail for the most recent aggravated battery charge, the respondent refused medication and was placed in isolation after he threatened to physically harm inmates and staff members. After the respondent was ordered to undergo a fitness evaluation, he was found unfit to stand trial and remanded to CMHC for treatment. While at CMHC, the respondent had to be physically restrained in an isolated, quiet room on several

occasions, and during one incident, he was forced to take emergency medication to control his disruptive behavior. While the respondent denied suffering from a mental illness, he had voluntarily taken the maximum recommended dose of Seroquel because he believed the medication treated anxiety. Despite taking the maximum dose of Seroquel, the respondent continued to display psychotic and paranoid behaviors. Although Dr. Vallabhaneni advised the respondent that Seroquel had been ineffective and recommended the administration of different medications, the respondent refused to consent to the administration of different medications.

¶ 6 Dr. Vallabhaneni testified that the respondent lacked the capacity to make a reasoned decision about his treatment and condition. Dr. Vallabhaneni explained that his opinions and conclusions were based on the respondent's denial of his mental illness, limited insight, and refusal to take medication and participate in a treatment intervention. Dr. Vallabhaneni stated that the respondent was provided with written documents that listed the alternatives to medication and provided detailed information about the benefits and potential side effects of each medication. When asked if, in his medical opinion, the benefits of the listed treatments and medications far outweighed any harm that could arise from the medications, Dr. Vallabhaneni responded, "Yes, they do." After Dr. Vallabhaneni discussed the purpose and potential side effects of each medication, the State asked Dr. Vallabhaneni whether he sought the "ability to test so [the psychotropic medications] may be safely administered. Since [the respondent is] not on the medications yet, you are going to establish a blood level?" Dr. Vallabhaneni responded, "Yes." The State then inquired whether Dr. Vallabhaneni had established a blood level, since the respondent had been taking Seroquel, and Dr. Vallabhaneni replied, "That is correct."

¶ 7 The State admitted the petition into evidence without objection. The written information that was provided to the respondent was also attached to the petition. The written information

3

indicated that blood tests "may be needed to check for unwanted effects" from olanzapine and that "lab tests" would be conducted at regular visits to check the effects of each medication.

¶ 8 The respondent testified to the following details. He was on permanent physical disability because he had suffered a leg injury in April 2014. The respondent's leg injury had been treated by a medical doctor, as well as several surgeons. The respondent explained that his medical doctors and surgeons had advised him against taking the medications.

¶ 9 After considering the testimony and exhibits introduced at the hearing, the circuit court entered an order for the administration of authorized involuntary treatment, finding the respondent had a serious mental illness, had exhibited deterioration in his ability to function, and had exhibited threatening behavior. The court's order listed olanzapine and lorazepam as the respondent's primary medications and risperidone and clonazepam as the respondent's alternative medications. Additionally, the court authorized periodic blood draws and tests to monitor medication, electrolyte, and enzyme levels, finding the tests and procedures essential for the safe and effective administration of treatment. The order specified that the treatment would be administered by "N. Vallabhaneni, M.D., Psychiatrist at Chester Mental Health Center." The order also stated that the respondent's alternative psychiatrists would be "the psychiatric staff at Chester Mental Health Center including: T. Casey; R. Gupta; P. Tiongson; M. Reddy; M. Galioto; and R. Maitra." This appeal followed.

¶ 10                                      II. Analysis

¶ 11 On appeal, the respondent raises three issues in support of his contention that the circuit court's order authorizing the administration of involuntary treatment and testing should be reversed. First, the respondent argues that the State failed to prove by clear and convincing evidence that the tests and other procedures ordered by the court were essential for the safe and

4

effective administration of treatment. Second, the respondent argues that the court's order designating specific persons to administer the medication was unsupported by the evidence. Third, the respondent argues he was denied effective assistance of counsel.

¶ 12    Before addressing the merits of the respondent's arguments, we must first address the issue of mootness. "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006). The present appeal is technically moot because the 90-day period for the administration of the psychotropic medications authorized by the circuit court's order, which was entered on July 29, 2015, has expired. See *In re Donald L.*, 2014 IL App (2d) 130044, ¶ 17.

¶ 13    Reviewing courts generally do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). A reviewing court will review a technically moot question, however, when the question falls within one of the three recognized exceptions to the mootness doctrine: (1) the public-interest exception, (2) the capable-of-repetition exception, and (3) the collateral-consequences exception. *Donald L.*, 2014 IL App (2d) 130044, ¶ 19. Although no "general exception" to the mootness doctrine exists for mental health cases, most appeals will usually fall within one of the three established exceptions. *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). The determination whether a case falls within a particular exception must be made on a case-by-case basis. *Id.*

¶ 14    While the respondent contends that all three of the exceptions to the mootness doctrine apply, we need not address his arguments regarding the public-interest and collateral-

consequences exceptions because we agree that the capable-of-repetition exception applies. That exception applies when the respondent shows that (1) the challenged action is of such short duration that it cannot be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.* at 358. Although the challenged action need not be identical under the second prong of the exception, the action "must have a substantial enough relation that the resolution of the issue in the present case would be likely to affect a future case involving [the] respondent." *Id.* at 359. We conclude that the capable-of-repetition exception applies, here, due to the short duration of involuntary treatment orders and the respondent's ongoing mental health issues and unwillingness to take medication. See *In re Joseph M.*, 405 Ill. App. 3d 1167, 1175 (2010). In so concluding, we note that the respondent raises sufficiency-of-the-evidence claims that may have no bearing on future proceedings. We will, however, reach the merits of the respondent's appeal because his claims also involve issues of statutory compliance that could affect the outcome of a future case.

¶ 15    Turning to the merits, the respondent first argues that the circuit court's order violated both his due process rights and the requirements set forth in the Code because its finding that he was subject to involuntary administration of psychotropic medication was against the manifest weight of the evidence. Specifically, he asserts that the State failed to prove, by clear and convincing evidence, that the tests and other procedures that the court ordered were essential for the safe and effective administration of the medication.

¶ 16    Because the involuntary administration of psychotropic medications to individuals alleged to suffer from mental illness implicates constitutionally protected liberty interests (*In re C.E.*, 161 Ill. 2d 200, 213 (1994); *In re Bobby F.*, 2012 IL App (5th) 110214, ¶ 14), the Code sets

forth certain procedural safeguards to protect these substantial liberty interests. *In re John R.*, 339 Ill. App. 3d 778, 785 (2003). Strict compliance with the procedural safeguards is required due to the liberty interests involved. *Id.* at 783-84. When a mental health patient exercises his or her right to refuse medication or lacks the capacity to make a reasoned decision about the treatment, the treatment may be administered only pursuant to section 2-107 or 2-107.1 of the Code. 405 ILCS 5/2-102(a-5) (West 2014). Pursuant to section 2-107.1(a-5), a person may petition the circuit court for an order authorizing the involuntary administration of psychotropic medication to a mental health patient. A petitioner seeking authorization for testing and other procedures must prove, by clear and convincing evidence, "that such testing and procedures are essential for the safe and effective administration of the treatment." *Id.* § 2-107.1(a-5)(4)(G).

¶ 17    While this standard may be satisfied through the presentation of expert testimony, expert opinions alone are insufficient and must be supported with specific facts establishing the bases for those opinions. *In re David S.*, 386 Ill. App. 3d 878, 883 (2008). The State is required to present "specific testimony about the requested testing and procedures." *In re Steven T.*, 2014 IL App (5th) 130328, ¶ 16 (citing *David S.*, 386 Ill. App. 3d at 883). The testifying psychiatrist's affirmation that the testing was requested to ensure the safe and effective administration of the medication does not satisfy the Code's requirement of clear and convincing evidence. *In re Larry B.*, 394 Ill. App. 3d 470, 478 (2009).

¶ 18    Whether there was substantial compliance with a statutory provision is a question of law, which we review *de novo*. *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 10. A reviewing court will not reverse an order authorizing the involuntary administration of psychotropic medication unless the circuit court's order is contrary to the manifest weight of the evidence. *John R.*, 339 Ill. App. 3d at 781. A ruling is against the manifest weight of the evidence only

7

when an opposite conclusion is clearly apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *In re Louis S.*, 361 Ill. App. 3d 774, 779 (2005).

¶ 19 Here, the State's presentation of Dr. Vallabhaneni's testimony at the hearing was insufficient to meet the clear and convincing standard set forth in the Code. Dr. Vallabhaneni did not testify that blood tests were essential for the respondent's treatment. Although Dr. Vallabhaneni discussed the potential negative side effects associated with each medication, he failed to relate the potential side effects to the testing requested in the petition. In addition, Dr. Vallabhaneni offered no specific testimony regarding the procedure, or frequency, of the requested blood draws and tests. Instead, he merely provided an affirmative response when asked whether he sought the "ability to test so [the psychotropic medications] may be safely administered. Since [the respondent is] not on the medications yet, you are going to establish a blood level?" As such, Dr. Vallabhaneni's affirmation did not constitute clear and convincing evidence that the testing and procedures were essential for the safe and effective administration of the respondent's treatment.

¶ 20 While conceding that Dr. Vallabhaneni's testimony alone was insufficient, the State points out that the petition and group exhibit were also admitted into evidence at the hearing. The petition specifically sought authorization for periodic blood draws and tests to monitor the medication, electrolyte, and enzyme levels. While the petition stated that the requested tests and procedures were essential for the safe and effective administration of the respondent's treatment, the State failed to present any evidence in support of this conclusion. In fact, the State's group exhibit, which included the written information that was provided to the respondent detailing each medication listed in the petition, indicated only that blood tests "*may* be needed to check for unwanted effects" of olanzapine. (Emphasis added.) The written information pertaining to the

8

other medications indicated only that "lab tests" would be conducted at regular visits to check the effects of each of the medications. Without more than a mere conclusion that the requested testing and procedures were essential, the State failed to provide the clear and convincing evidence required by the Code to administer the requested tests without the respondent's consent. See *Steven T.*, 2014 IL App (5th) 130328, ¶ 17. Thus, the circuit court's finding that the periodic blood draws and tests were essential for the safe and effective administration of treatment was against the manifest weight of the evidence. Although reversal of the court's order is warranted on this basis alone, we will address the merits of the respondent's second argument because it is likely that our resolution of the issue may affect a future case involving the respondent.

¶ 21     In his second argument, the respondent contends that the circuit court's order failed to comply with the Code because its designation of specific persons authorized to administer treatment was not supported by the evidence presented by the State at the hearing. Section 2-107.1(a-5)(6) of the Code sets forth certain requirements pertaining to court orders authorizing the involuntary administration of psychotropic medications. 405 ILCS 5/2-107.1(a-5)(6) (West 2014). Specifically, section 2-107.1(a-5)(6) states that the order "shall designate the persons authorized to administer the treatment under the standards and procedures" set forth in subsection (a-5). *Id.* A court's failure to name specific individuals who are authorized to administer the medication in the order warrants reversal. *In re Cynthia S.*, 326 Ill. App. 3d 65, 69 (2001). Whether there was substantial compliance with a statutory provision is a question of law, which we review *de novo*. *Steven T.*, 2014 IL App (5th) 130328, ¶ 13 (citing *Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 10). When reviewing the sufficiency-of-the-evidence claim, we will reverse the court's order only if it is against the manifest weight of the evidence. *In re Cathy M.*, 326 Ill. App. 3d 335, 341 (2001).

¶ 22    Here, it is undisputed that the circuit court's order named specific persons authorized to administer psychotropic medications to the respondent. In particular, the order stated that the treatment would be administered by "N. Vallabhaneni, M.D., Psychiatrist at Chester Mental Health Center." The court's order also provided that the respondent's alternative psychiatrists would be the "psychiatric staff at Chester Mental Health Center," including the following: T. Casey, M.D.; R. Gupta, M.D.; P. Tiongson, M.D.; M. Reddy, M.D.; M. Galioto; and R. Maitra, M.D. The parties' dispute, instead, centers on what evidence the State is required to present at the hearing to support the court's order authorizing these persons to administer the respondent's treatment.

¶ 23    While this court is aware of no case precedent specifically addressing this issue, we note that our colleagues in the Fourth District addressed a similar issue in *In re A.W.*, 381 Ill. App. 3d 950 (2008). In considering the requirement that the circuit court's order "specify the medications and the anticipated range of dosages that have been authorized" (405 ILCS 5/2-107.1(a-5)(6)), the Fourth District acknowledged that the Code does not explicitly require the State to establish by clear and convincing evidence the proposed medications and the anticipated range of dosages. *A.W.*, 381 Ill. App. 3d at 958. The Fourth District noted, however, that the type of medication is a necessary component of section 2-107.1(a-5)(4)(D) and that courts have usually required some evidence of the medications sought to be administered. *Id.* at 958-59. Thus, the Fourth District held that the circuit court's order must be supported by evidence presented by the State "as to the anticipated range of dosages of the proposed psychotropic medication." *Id.* at 959. In so holding, the Fourth District rejected the State's argument that the list of anticipated dosages contained in the petition was sufficient where the circuit court did not take judicial notice of the anticipated dosages listed in the petition, the petition was not admitted into evidence for the purpose of

10

establishing the anticipated dosages, and there was no testimony that the proposed psychotropic medications were requested in the dosages listed in the petition. *Id.*

¶ 24    Similarly, here, although the Code does not explicitly require the State to present clear and convincing evidence as to the individuals authorized to administer the treatment, we conclude that the State is required to present evidence as to each person who will administer the involuntary treatment. In so concluding, we note that the Code requires that recipients of mental health services "be provided with adequate and humane care and services in the least restrictive environment, pursuant to an individual services plan" (405 ILCS 5/2-102(a) (West 2014)), and provides that "[a] qualified professional shall be responsible for overseeing the implementation of such plan" (*id.* § 2-102(a-5)). In addition, section 2-107.1(f) requires "annual trainings for physicians and registered nurses working in State-operated mental health facilities on the appropriate use of psychotropic medication" and the standards for using such medications. *Id.* § 2-107.1(f). Thus, in our view, the circuit court's order must be supported by evidence presented by the State to "ensure that only a limited number of designated—and presumably well-trained—individuals will be able to administer these powerful drugs, pursuant to a court order, to an unwilling recipient." *In re Miller*, 301 Ill. App. 3d 1060, 1072 (1998).

¶ 25    Based on our review of the evidence, we conclude that the circuit court's order, authorizing Dr. Vallabhaneni to administer treatment to the respondent, was supported by Dr. Vallabhaneni's testimony. In particular, Dr. Vallabhaneni testified that he was the respondent's treating physician and that he sought to administer the medications and dosages listed in the petition. The State, however, failed to present sufficient evidence to support the court's order authorizing the alternative psychiatrists to administer treatment. As in *A.W.*, the State, here, argues that the court's order was supported by the petition, which provided a detailed list of the

11

respondent's alternative psychiatrists. While the alternative psychiatrists were individually named in the petition, the court neither took judicial notice of the individuals named in the petition nor admitted the petition into evidence for the purpose of establishing that those individuals would be authorized to administer the respondent's treatment. In addition, Dr. Vallabhaneni offered no testimony regarding the alternative psychiatrists listed in the petition. Accordingly, the court should not have authorized those persons to administer the respondent's treatment without supporting evidence.

¶ 26    The respondent also argues he was denied effective assistance of counsel. Because of our resolution of the preceding issues and our determination that the order granting the petition must be reversed, we need not consider the respondent's allegations regarding his counsel's representation. See *Larry B.*, 394 Ill. App. 3d at 479.

¶ 27                                III. Conclusion

¶ 28    For the foregoing reasons, the order of the circuit court of Randolph County authorizing the involuntary administration of psychotropic medications and testing is hereby reversed.

¶ 29    Reversed.

¶ 30    JUSTICE CATES, dissenting:

¶ 31    Based upon the circumstances reflected herein, I believe this case is moot, and this appeal should be dismissed. Inasmuch as my colleagues disagreed, and decided the merits of the appeal, I dissent. In my view, there was sufficient evidence to support the circuit court's order authorizing the involuntary administration of psychotropic medication, as allowed by the Mental Health and Developmental Disabilities Code (405 ILCS 5/2-107.1(a-5) (West 2014)).

12

2018 IL App (5th) 150301

NO. 5-15-0301

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* CHRISTOPHER C., Alleged to Be a Person Subject to the Involuntary Administration of Psychotropic Medication | ) ) ) ) | Appeal from the Circuit Court of Randolph County. |
| (The People of the State of Illinois, Petitioner-Appellee, v. Christopher C., Respondent-Appellant). | ) ) ) ) ) ) | No. 15-MH-74  Honorable Richard A. Brown, Judge, presiding. |

_____

**Rule 23 Order Filed:**      October 18, 2018
**Motion ot Publish Granted:**      November 16, 2018
**Opinion Filed:**      November 16, 2018

_____

**Justices:**      Honorable John B. Barberis, P.J.

                 Honorable James R. Moore, J.,
                 Concurring
                 Honorable Judy L. Cates, J.,
                 Dissenting

_____

**Attorneys for Appellant**      Barbara A. Goeben, Staff Attorney, Veronique Baker, Director, Legal Advocacy Service, Guardianship and Advocacy Commission, Metro East Regional Office, 4500 College Avenue, Suite 100, Alton, IL 62002

_____

**Attorneys for Appellee**      Hon. Jeremy R. Walker, State's Attorney, Randolph County Courthouse, Chester, IL 62233; Patrick Delfino, Director, David J. Robinson, Acting Deputy Director, Chelsea E. Kasten, Staff Attorney, Office of the State's Attorneys, Appellate Prosecutor, Fifth District Office, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____